## AETNA HEALTH INC., FKA AETNA U. S. HEALTHCARE INC., ET AL. v. DAVILA

No. 02–1845.   Argued March 23, 2004—Decided June 21, 2004*

*Together with No. 03–83, *CIGNA HealthCare of Texas, Inc., dba CIGNA Corp.* v. *Calad et al.*, also on certiorari to the same court.

*Miguel A. Estrada* argued the cause for petitioners in both cases. With him on the briefs in No. 02–1845 were *Mark A. Perry, J. Edward Neugebauer, John B. Shely, Kendall M. Gray,* and *Roy T. Englert, Jr.* On the briefs in No. 03–83 were *Robert N. Eccles* and *Jonathan D. Hacker.*

*James A. Feldman* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Acting Solicitor General Clement, Deputy Solicitor General Kneedler, Howard M. Radzely, Allen H. Feldman, Nathaniel I. Spiller,* and *Edward D. Sieger.*

*David Mattax,* Assistant Attorney General of Texas, argued the cause for the State of Texas et al. as *amici curiae* urging affirmance. With him on the brief were *Greg Abbott,*

Attorney General, *Barry R. McBee*, First Assistant Attorney General, *Edward D. Burbach*, Deputy Attorney General, *R. Ted Cruz*, Solicitor General, *Rance L. Craft* and *Kristofer S. Monson*, Assistant Solicitors General, and *Anabelle Rodríguez*, Secretary of Justice of Puerto Rico, and by the Attorneys General for their respective States as follows: *Bill Lockyer* of California, *Richard Blumenthal* of Connecticut, *M. Jane Brady* of Delaware, *Lisa Madigan* of Illinois, *Phill Kline* of Kansas, *Charles C. Foti, Jr.*, of Louisiana, *J. Joseph Curran, Jr.*, of Maryland, *Mike Hatch* of Minnesota, *Jeremiah W. "Jay" Nixon* of Missouri, *Mike McGrath* of Montana, *Brian Sandoval* of Nevada, *Patricia A. Madrid* of New Mexico, *Eliot Spitzer* of New York, *Jim Petro* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Mark L. Shurtleff* of Utah, *William H. Sorrell* of Vermont, and *Christine O. Gregoire* of Washington.

*George Parker Young* argued the cause for respondents in both cases. With him on the brief was *Eric Schnapper*.†

---

†Briefs of *amici curiae* urging reversal were filed for AAHP–HIAA et al. by *Seth P. Waxman, Edward C. DuMont, Kenneth A. Bamberger,* and *Stephanie W. Kanwit;* for the Association of Federal Health Organizations by *Anthony F. Shelley* and *James R. Barnett;* and for the Chamber of Commerce of the United States by *Glen D. Nager, Traci L. Lovitt, Stephen A. Bokat,* and *Robin S. Conrad.*

Briefs of *amici curiae* urging affirmance were filed for AARP et al. by *Sarah Lenz Lock, Michael Schuster,* and *Judith L. Lichtman;* for the American College of Legal Medicine by *Miles J. Zaremski;* for the American Medical Association et al. by *Gary W. Howell, Thomas Campbell, Jon N. Ekdahl, Leonard A. Nelson,* and *Donald P. Wilcox;* for the Association of Trial Lawyers of America by *Daniel M. Soloway, Jeffrey Robert White,* and *David S. Casey, Jr.;* for the California Consumer Health Care Council et al. by *Eugene R. Anderson, Rhonda D. Orin, Daniel J. Healy,* and *David Trueman;* for Community Rights Counsel et al. by *Timothy J. Dowling;* for the Council of State Governments et al. by *Richard Ruda* and *James I. Crowley;* for Families USA et al. by *Jeffrey Lewis;* for the Health Administration Responsibility Project by *Sharon J. Arkin* and *Harvey S. Frey;* for the National Alliance for Model State Drug Laws by *Gerald*

JUSTICE THOMAS delivered the opinion of the Court.

In these consolidated cases, two individuals sued their respective health maintenance organizations (HMOs) for alleged failures to exercise ordinary care in the handling of coverage decisions, in violation of a duty imposed by the Texas Health Care Liability Act (THCLA), Tex. Civ. Prac. & Rem. Code Ann. §§ 88.001–88.003 (West 2004 Supp. Pamphlet). We granted certiorari to decide whether the individuals' causes of action are completely pre-empted by the "interlocking, interrelated, and interdependent remedial scheme," *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134, 146 (1985), found at § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 891, as amended, 29 U. S. C. § 1132(a) *et seq.* 540 U. S. 981 (2003). We hold that the causes of action are completely pre-empted and hence removable from state to federal court. The Court of Appeals, having reached a contrary conclusion, is reversed.

## I

### A

Respondent Juan Davila is a participant, and respondent Ruby Calad is a beneficiary, in ERISA-regulated employee benefit plans. Their respective plan sponsors had entered into agreements with petitioners, Aetna Health Inc. and CIGNA HealthCare of Texas, Inc., to administer the plans. Under Davila's plan, for instance, Aetna reviews requests for coverage and pays providers, such as doctors, hospitals, and nursing homes, which perform covered services for members; under Calad's plan sponsor's agreement, CIGNA is responsible for plan benefits and coverage decisions.

Respondents both suffered injuries allegedly arising from Aetna's and CIGNA's decisions not to provide coverage for

---

*A. McHugh, Jr.,* and *Gregory B. Heller;* for United Policyholders by *Arnold R. Levinson;* and for Senator Edward M. Kennedy et al. by *Mr. Zaremski.*

certain treatment and services recommended by respondents' treating physicians. Davila's treating physician prescribed Vioxx to remedy Davila's arthritis pain, but Aetna refused to pay for it. Davila did not appeal or contest this decision, nor did he purchase Vioxx with his own resources and seek reimbursement. Instead, Davila began taking Naprosyn, from which he allegedly suffered a severe reaction that required extensive treatment and hospitalization. Calad underwent surgery, and although her treating physician recommended an extended hospital stay, a CIGNA discharge nurse determined that Calad did not meet the plan's criteria for a continued hospital stay. CIGNA consequently denied coverage for the extended hospital stay. Calad experienced postsurgery complications forcing her to return to the hospital. She alleges that these complications would not have occurred had CIGNA approved coverage for a longer hospital stay.

Respondents brought separate suits in Texas state court against petitioners. Invoking THCLA § 88.002(a), respondents argued that petitioners' refusal to cover the requested services violated their "duty to exercise ordinary care when making health care treatment decisions," and that these refusals "proximately caused" their injuries. *Ibid.* Petitioners removed the cases to Federal District Courts, arguing that respondents' causes of action fit within the scope of, and were therefore completely pre-empted by, ERISA § 502(a). The respective District Courts agreed, and declined to remand the cases to state court. Because respondents refused to amend their complaints to bring explicit ERISA claims, the District Courts dismissed the complaints with prejudice.

B

Both Davila and Calad appealed the refusals to remand to state court. The United States Court of Appeals for the Fifth Circuit consolidated their cases with several others raising similar issues. The Court of Appeals recognized

that state causes of action that "duplicat[e] or fal[l] within
the scope of an ERISA § 502(a) remedy" are completely pre-
empted and hence removable to federal court. *Roark* v.
*Humana, Inc.,* 307 F. 3d 298, 305 (2002) (internal quota-
tion marks omitted). After examining the causes of action
available under § 502(a), the Court of Appeals determined
that respondents' claims could possibly fall under only two:
§ 502(a)(1)(B), which provides a cause of action for the recov-
ery of wrongfully denied benefits, and § 502(a)(2), which
allows suit against a plan fiduciary for breaches of fiduciary
duty to the plan.

Analyzing § 502(a)(2) first, the Court of Appeals concluded
that, under *Pegram* v. *Herdrich,* 530 U. S. 211 (2000), the de-
cisions for which petitioners were being sued were "mixed
eligibility and treatment decisions" and hence were not fidu-
ciary in nature. 307 F. 3d, at 307–308.[1] The Court of Ap-
peals next determined that respondents' claims did not fall
within § 502(a)(1)(B)'s scope. It found significant that re-
spondents "assert tort claims," while § 502(a)(1)(B) "creates
a cause of action for breach of contract," *id.,* at 309, and also
that respondents "are not seeking reimbursement for bene-
fits denied them," but rather request "tort damages" arising
from "an external, statutorily imposed duty of 'ordinary
care,'" *ibid.* From *Rush Prudential HMO, Inc.* v. *Moran,*
536 U. S. 355 (2002), the Court of Appeals derived the princi-
ple that complete pre-emption is limited to situations in
which "States . . . duplicate the causes of action listed in
ERISA § 502(a)," and concluded that "[b]ecause the THCLA
does not provide an action for collecting benefits," it fell out-
side the scope of § 502(a)(1)(B). 307 F. 3d, at 310–311.

---

[1] In this Court, petitioners do not claim or argue that respondents'
causes of action fall under ERISA § 502(a)(2). Because petitioners do not
argue this point, and since we can resolve these cases entirely by reference
to ERISA § 502(a)(1)(B), we do not address ERISA § 502(a)(2).

## II

### A

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U. S. C. § 1441(a). One category of cases of which district courts have original jurisdiction is "[f]ederal question" cases: cases "arising under the Constitution, laws, or treaties of the United States." § 1331. We face in these cases the issue whether respondents' causes of action arise under federal law.

Ordinarily, determining whether a particular case arises under federal law turns on the "'well-pleaded complaint'" rule. *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 9–10 (1983). The Court has explained that

> "whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor* v. *Anderson*, 234 U. S. 74, 75–76 (1914).

In particular, the existence of a federal defense normally does not create statutory "arising under" jurisdiction, *Louisville & Nashville R. Co.* v. *Mottley*, 211 U. S. 149 (1908), and "a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law," *Franchise Tax Bd., supra,* at 10. There is an exception, however, to the well-pleaded complaint rule. "[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. *Beneficial Nat. Bank* v. *Anderson*, 539 U. S. 1, 8 (2003). This is so because "[w]hen

the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Ibid.* ERISA is one of these statutes.

B

Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U. S. C. § 1001(b). The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 U. S. C. § 1144, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi* v. *Raybestos-Manhattan, Inc.,* 451 U. S. 504, 523 (1981).

ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement." *Russell,* 473 U. S., at 147 (internal quotation marks omitted). This integrated enforcement mechanism, ERISA § 502(a), 29 U. S. C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans. As the Court said in *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U. S. 41 (1987):

"[T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan

participants and beneficiaries were free to obtain reme-
dies under state law that Congress rejected in ERISA.
'The six carefully integrated civil enforcement provi-
sions found in § 502(a) of the statute as finally enacted
. . . provide strong evidence that Congress did *not* intend
to authorize other remedies that it simply forgot to
incorporate expressly.'" *Id.*, at 54 (quoting *Russell,
supra*, at 146).

Therefore, any state-law cause of action that duplicates, sup-
plements, or supplants the ERISA civil enforcement remedy
conflicts with the clear congressional intent to make the
ERISA remedy exclusive and is therefore pre-empted. See
481 U. S., at 54–56; see also *Ingersoll-Rand Co.* v. *McClen-
don*, 498 U. S. 133, 143–145 (1990).

The pre-emptive force of ERISA § 502(a) is still stronger.
In *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U. S. 58, 65–66
(1987), the Court determined that the similarity of the lan-
guage used in the Labor Management Relations Act, 1947
(LMRA), and ERISA, combined with the "clear intention" of
Congress "to make § 502(a)(1)(B) suits brought by partici-
pants or beneficiaries federal questions for the purposes
of federal court jurisdiction in like manner as § 301 of
the LMRA," established that ERISA § 502(a)(1)(B)'s pre-
emptive force mirrored the pre-emptive force of LMRA
§ 301. Since LMRA § 301 converts state causes of action
into federal ones for purposes of determining the propriety
of removal, see *Avco Corp.* v. *Machinists*, 390 U. S. 557
(1968), so too does ERISA § 502(a)(1)(B). Thus, the ERISA
civil enforcement mechanism is one of those provisions with
such "extraordinary pre-emptive power" that it "converts an
ordinary state common law complaint into one stating a fed-
eral claim for purposes of the well-pleaded complaint rule."
*Metropolitan Life*, 481 U. S., at 65–66. Hence, "causes of
action within the scope of the civil enforcement provisions of
§ 502(a) [are] removable to federal court." *Id.*, at 66.

## III

### A

ERISA § 502(a)(1)(B) provides:

> "A civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U. S. C. § 1132(a)(1)(B).

This provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to "enforce his rights" under the plan, or to clarify any of his rights to future benefits. Any dispute over the precise terms of the plan is resolved by a court under a *de novo* review standard, unless the terms of the plan "giv[e] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co.* v. *Bruch,* 489 U. S. 101, 115 (1989).

It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Metropolitan Life, supra,* at 66. In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

To determine whether respondents' causes of action fall "within the scope" of ERISA § 502(a)(1)(B), we must examine respondents' complaints, the statute on which their claims are based (the THCLA), and the various plan documents. Davila alleges that Aetna provides health coverage under his employer's health benefits plan. App. H to Pet. for Cert. in No. 02–1845, p. 67a, ¶ 11. Davila also alleges that after his primary care physician prescribed Vioxx, Aetna refused to pay for it. *Id.*, at 67a, ¶ 12. The only action complained of was Aetna's refusal to approve payment for Davila's Vioxx prescription. Further, the only relationship Aetna had with Davila was its partial administration of Davila's employer's benefit plan. See App. JA–25, JA–31, JA–39 to JA–40, JA–45 to JA–48, JA–108.

Similarly, Calad alleges that she receives, as her husband's beneficiary under an ERISA-regulated benefit plan, health coverage from CIGNA. *Id.*, at JA–184, ¶ 17. She alleges that she was informed by CIGNA, upon admittance into a hospital for major surgery, that she would be authorized to stay for only one day. *Id.*, at JA–184, ¶ 18. She also alleges that CIGNA, acting through a discharge nurse, refused to authorize more than a single day despite the advice and recommendation of her treating physician. *Id.*, at JA–185, ¶¶ 20, 21. Calad contests only CIGNA's decision to refuse coverage for her hospital stay. *Id.*, at JA–185, ¶ 20. And, as in Davila's case, the only connection between Calad and CIGNA is CIGNA's administration of portions of Calad's ERISA-regulated benefit plan. *Id.*, at JA–219 to JA–221.

It is clear, then, that respondents complain only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans. Upon the denial of benefits, respondents could have paid for the treatment themselves and then sought reimbursement through a § 502(a)(1)(B) action, or sought a preliminary injunction, see *Pryzbowski* v. *U. S. Healthcare, Inc.*, 245 F. 3d 266, 274 (CA3

2001) (giving examples where federal courts have issued such preliminary injunctions).[2]

Respondents contend, however, that the complained-of actions violate legal duties that arise independently of ERISA or the terms of the employee benefit plans at issue in these cases. Both respondents brought suit specifically under the THCLA, alleging that petitioners "controlled, influenced, participated in and made decisions which affected the quality of the diagnosis, care, and treatment provided" in a manner that violated "the duty of ordinary care set forth in §§ 88.001 and 88.002." App. H to Pet. for Cert. in No. 02–1845, at 69a, ¶ 18; see also App. JA–187, ¶ 28. Respondents contend that this duty of ordinary care is an independent legal duty. They analogize to this Court's decisions interpreting LMRA § 301, 29 U. S. C. § 185, with particular focus on *Caterpillar Inc.* v. *Williams*, 482 U. S. 386 (1987) (suit for breach of individual employment contract, even if defendant's action also constituted a breach of an entirely separate collective-bargaining agreement, not pre-empted by LMRA § 301). Because this duty of ordinary care arises independently of any duty imposed by ERISA or the plan terms, the argument goes, any civil action to enforce this duty is not within the scope of the ERISA civil enforcement mechanism.

The duties imposed by the THCLA in the context of these cases, however, do not arise independently of ERISA or the plan terms. The THCLA does impose a duty on managed care entities to "exercise ordinary care when making health care treatment decisions," and makes them liable for damages proximately caused by failures to abide by that duty.

---

[2] Respondents also argue that the benefit due under their ERISA-regulated employee benefit plans is simply the membership in the respective HMOs, not coverage for the particular medical treatments that are delineated in the plan documents. See Brief for Respondents 28–30. Respondents did not identify this possible argument in their brief in opposition to the petitions for certiorari, and we deem it waived. See this Court's Rule 15.2.

§ 88.002(a). However, if a managed care entity correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered, the managed care entity's denial of coverage would not be a proximate cause of any injuries arising from the denial. Rather, the failure of the plan itself to cover the requested treatment would be the proximate cause.[3] More significantly, the THCLA clearly states that "[t]he standards in Subsections (a) and (b) create no obligation on the part of the health insurance carrier, health maintenance organization, or other managed care entity to provide to an insured or enrollee treatment which is not covered by the health care plan of the entity." § 88.002(d). Hence, a managed care entity could not be subject to liability under the THCLA if it denied coverage for any treatment not covered by the health care plan that it was administering.

Thus, interpretation of the terms of respondents' benefit plans forms an essential part of their THCLA claim, and THCLA liability would exist here only because of petitioners' administration of ERISA-regulated benefit plans. Petitioners' potential liability under the THCLA in these cases, then, derives entirely from the particular rights and obligations established by the benefit plans. So, unlike the state-law claims in *Caterpillar, supra,* respondents' THCLA causes of action are not entirely independent of the federally regulated contract itself. Cf. *Allis-Chalmers Corp.* v. *Lueck,* 471 U. S. 202, 217 (1985) (state-law tort of bad-faith handling of insurance claim pre-empted by LMRA § 301, since the "duties imposed and rights established through the state tort . . . derive[d] from the rights and obligations established by the contract"); *Steelworkers* v. *Rawson,* 495 U. S.

---

[3] To take a clear example, if the terms of the health care plan specifically exclude from coverage the cost of an appendectomy, then any injuries caused by the refusal to cover the appendectomy are properly attributed to the terms of the plan itself, not the managed care entity that applied those terms.

362, 371 (1990) (state-law tort action brought due to alleged negligence in the inspection of a mine was pre-empted, as the duty to inspect the mine arose solely out of the collective-bargaining agreement).

Hence, respondents bring suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA. We hold that respondents' state causes of action fall "within the scope of" ERISA § 502(a)(1)(B), *Metropolitan Life,* 481 U. S., at 66, and are therefore completely pre-empted by ERISA § 502 and removable to federal district court.[4]

## B

The Court of Appeals came to a contrary conclusion for several reasons, all of them erroneous. First, the Court of Appeals found significant that respondents "assert a tort claim for tort damages" rather than "a contract claim for contract damages," and that respondents "are not seeking reimbursement for benefits denied them." 307 F. 3d, at 309. But, distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would "elevate form over substance and allow parties to evade" the pre-emptive scope of ERISA simply "by relabeling their contract claims as claims for tortious breach of contract." *Allis-Chalmers, supra,* at 211. Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) put the cause

---

[4] Respondents also argue that ERISA § 502(a) completely pre-empts a state cause of action only if the cause of action would be pre-empted under ERISA § 514(a); respondents then argue that their causes of action do not fall under the terms of § 514(a). But a state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress' clear intent to make the ERISA mechanism exclusive. See *Ingersoll-Rand Co.* v. *McClendon,* 498 U. S. 133, 142 (1990) (holding that "[e]ven if there were no express pre-emption [under ERISA § 514(a)]" of the cause of action in that case, it "would be pre-empted because it conflict[ed] directly with an ERISA cause of action").

of action outside the scope of the ERISA civil enforcement mechanism. In *Pilot Life, Metropolitan Life*, and *Ingersoll-Rand*, the plaintiffs all brought state claims that were labeled either tort or tort-like. See *Pilot Life*, 481 U. S., at 43 (suit for, *inter alia*, "'Tortious Breach of Contract'"); *Metropolitan Life, supra*, at 61–62 (suit requesting damages for "mental anguish caused by breach of [the] contract"); *Ingersoll-Rand*, 498 U. S., at 136 (suit brought under various tort and contract theories). And, the plaintiffs in these three cases all sought remedies beyond those authorized under ERISA. See *Pilot Life, supra*, at 43 (compensatory and punitive damages); *Metropolitan Life, supra*, at 61 (mental anguish); *Ingersoll-Rand, supra*, at 136 (punitive damages, mental anguish). And, in all these cases, the plaintiffs' claims were pre-empted. The limited remedies available under ERISA are an inherent part of the "careful balancing" between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans. *Pilot Life, supra*, at 55.

Second, the Court of Appeals believed that "the wording of [respondents'] plans is immaterial" to their claims, as "they invoke an external, statutorily imposed duty of 'ordinary care.'" 307 F. 3d, at 309. But as we have already discussed, the wording of the plans is certainly material to their state causes of action, and the duty of "ordinary care" that the THCLA creates is not external to their rights under their respective plans.

Ultimately, the Court of Appeals rested its decision on one line from *Rush Prudential*. There, we described our holding in *Ingersoll-Rand* as follows: "[W]hile state law duplicated the elements of a claim available under ERISA, it converted the remedy from an equitable one under § 1132(a)(3) (available exclusively in federal district courts) into a legal one for money damages (available in a state tribunal)." 536 U. S., at 379. The point of this sentence was to describe why the state cause of action in *Ingersoll-Rand* was pre-empted by ERISA § 502(a): It was pre-empted because it attempted

to convert an equitable remedy into a legal remedy. Nowhere in *Rush Prudential* did we suggest that the preemptive force of ERISA § 502(a) is limited to the situation in which a state cause of action precisely duplicates a cause of action under ERISA § 502(a).

Nor would it be consistent with our precedent to conclude that only strictly duplicative state causes of action are preempted. Frequently, in order to receive exemplary damages on a state claim, a plaintiff must prove facts beyond the bare minimum necessary to establish entitlement to an award. Cf. *Allis-Chalmers*, 471 U. S., at 217 (bad-faith refusal to honor a claim needed to be proved in order to recover exemplary damages). In order to recover for mental anguish, for instance, the plaintiffs in *Ingersoll-Rand* and *Metropolitan Life* would presumably have had to prove the existence of mental anguish; there is no such element in an ordinary suit brought under ERISA § 502(a)(1)(B). See *Ingersoll-Rand, supra,* at 136; *Metropolitan Life, supra,* at 61. This did not save these state causes of action from pre-emption. Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim.

C

Respondents also argue—for the first time in their brief to this Court—that the THCLA is a law that regulates insurance, and hence that ERISA § 514(b)(2)(A) saves their causes of action from pre-emption (and thereby from complete pre-emption).[5] This argument is unavailing. The existence of

---

[5] ERISA § 514(b)(2)(A), 29 U. S. C. § 1144(b)(2)(A), reads, as relevant: "[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

a comprehensive remedial scheme can demonstrate an "overpowering federal policy" that determines the interpretation of a statutory provision designed to save state law from being pre-empted. *Rush Prudential,* 536 U. S., at 375. ERISA's civil enforcement provision is one such example. See *ibid.*

As this Court stated in *Pilot Life,* "our understanding of [§ 514(b)(2)(A)] must be informed by the legislative intent concerning the civil enforcement provisions provided by ERISA § 502(a), 29 U. S. C. § 1132(a)." 481 U. S., at 52. The Court concluded that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.,* at 54. The Court then held, based on

> "the common-sense understanding of the saving clause, the McCarran-Ferguson Act factors defining the business of insurance, and, *most importantly,* the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive, . . . that [the plaintiff's] state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is not saved by § 514(b)(2)(A)." *Id.,* at 57 (emphasis added).

*Pilot Life's* reasoning applies here with full force. Allowing respondents to proceed with their state-law suits would "pose an obstacle to the purposes and objectives of Congress." *Id.,* at 52. As this Court has recognized in both *Rush Prudential* and *Pilot Life,* ERISA § 514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA § 502(a). Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as "regulating insurance" will be pre-empted if it provides a separate vehicle to assert

a claim for benefits outside of, or in addition to, ERISA's remedial scheme.

## IV

Respondents, their *amici*, and some Courts of Appeals have relied heavily upon *Pegram* v. *Herdrich*, 530 U. S. 211 (2000), in arguing that ERISA does not pre-empt or completely pre-empt state suits such as respondents'. They contend that *Pegram* makes it clear that causes of action such as respondents' do not "relate to [an] employee benefit plan," ERISA § 514(a), 29 U. S. C. § 1144(a), and hence are not pre-empted. See Brief for Respondents 35–38; *Cicio* v. *Does*, 321 F. 3d 83, 100–104 (CA2 2003), cert. pending *sub nom. Vytra Healthcare* v. *Cicio*, No. 03–69 [REPORTER'S NOTE: See *post*, p. 933]; see also *Land* v. *CIGNA Healthcare of Fla.*, 339 F. 3d 1286, 1292–1294 (CA11 2003).

*Pegram* cannot be read so broadly. In *Pegram*, the plaintiff sued her physician-owned-and-operated HMO (which provided medical coverage through plaintiff's employer pursuant to an ERISA-regulated benefit plan) and her treating physician, both for medical malpractice and for a breach of an ERISA fiduciary duty. See 530 U. S., at 215–216. The plaintiff's treating physician was also the person charged with administering plaintiff's benefits; it was she who decided whether certain treatments were covered. See *id.*, at 228. We reasoned that the physician's "eligibility decision and the treatment decision were inextricably mixed." *Id.*, at 229. We concluded that "Congress did not intend [the defendant HMO] or any other HMO to be treated as a fiduciary to the extent that it makes mixed eligibility decisions acting through its physicians." *Id.*, at 231.

A benefit determination under ERISA, though, is generally a fiduciary act. See *Bruch*, 489 U. S., at 111–113. "At common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries." *Pegram, supra*, at 231; cf. 2A A. Scott & W. Fratcher, Law of Trusts §§ 182, 183 (4th ed. 1987);

G. Bogert & G. Bogert, Law of Trusts & Trustees § 541 (rev. 2d ed. 1993). Hence, a benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan. See *Varity Corp.* v. *Howe,* 516 U. S. 489, 512 (1996) (relevant plan fiduciaries owe a "fiduciary duty with respect to the interpretation of plan documents and the payment of claims"). The fact that a benefits determination is infused with medical judgments does not alter this result.

*Pegram* itself recognized this principle. *Pegram,* in highlighting its conclusion that "mixed eligibility decisions" were not fiduciary in nature, contrasted the operation of "[t]raditional trustees administer[ing] a medical trust" and "physicians through whom HMOs act." 530 U. S., at 231–232. A traditional medical trust is administered by "paying out money to buy medical care, whereas physicians making mixed eligibility decisions consume the money as well." *Ibid.* And, significantly, the Court stated that "[p]rivate trustees do not make treatment judgments." *Id.,* at 232. But a trustee managing a medical trust undoubtedly must make administrative decisions that require the exercise of medical judgment. Petitioners are not the employers of respondents' treating physicians and are therefore in a somewhat analogous position to that of a trustee for a traditional medical trust.[6]

---

[6] Both *Pilot Life* and *Metropolitan Life* support this understanding. The plaintiffs in *Pilot Life* and *Metropolitan Life* challenged disability determinations made by the insurers of their ERISA-regulated employee benefit plans. See *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U. S. 41, 43 (1987); *Metropolitan Life Ins. Co.* v. *Taylor,* 481 U. S. 58, 61 (1987). A disability determination often involves medical judgments. See, *e. g., ibid.* (plaintiff determined not to be disabled only after a medical examination undertaken by one of his employer's physicians). Yet, in both *Pilot Life* and *Metropolitan Life,* the Court held that the causes of action were preempted. Cf. *Black & Decker Disability Plan* v. *Nord,* 538 U. S. 822 (2003) (discussing "treating physician" rule in the context of disability determinations made by ERISA-regulated disability plans).

ERISA itself and its implementing regulations confirm this interpretation. ERISA defines a fiduciary as any person "to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of [an employee benefit] plan." § 3(21)(A)(iii), 29 U. S. C. § 1002(21)(A)(iii). When administering employee benefit plans, HMOs must make discretionary decisions regarding eligibility for plan benefits, and, in this regard, must be treated as plan fiduciaries. See *Varity Corp.*, *supra*, at 511 (plan administrator "engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents"). Also, ERISA § 503, which specifies minimum requirements for a plan's claim procedure, requires plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U. S. C. § 1133(2). This strongly suggests that the ultimate decisionmaker in a plan regarding an award of benefits must be a fiduciary and must be acting as a fiduciary when determining a participant's or beneficiary's claim. The relevant regulations also establish extensive requirements to ensure full and fair review of benefit denials. See 29 CFR § 2560.503–1 (2003). These regulations, on their face, apply equally to health benefit plans and other plans, and do not draw distinctions between medical and nonmedical benefits determinations. Indeed, the regulations strongly imply that benefits determinations involving medical judgments are, just as much as any other benefits determinations, actions by plan fiduciaries. See, *e. g.*, § 2560.503–1(h)(3)(iii). Classifying any entity with discretionary authority over benefits determinations as anything but a plan fiduciary would thus conflict with ERISA's statutory and regulatory scheme.

Since administrators making benefits determinations, even determinations based extensively on medical judgments, are ordinarily acting as plan fiduciaries, it was essential to *Pe-*

*gram*'s conclusion that the decisions challenged there were truly "mixed eligibility and treatment decisions," 530 U. S., at 229, *i. e.,* medical necessity decisions made by the plaintiff's treating physician *qua* treating physician and *qua* benefits administrator. Put another way, the reasoning of *Pegram* "only make[s] sense where the underlying negligence also plausibly constitutes medical maltreatment by a party who can be deemed to be a treating physician or such a physician's employer." *Cicio,* 321 F. 3d, at 109 (Calabresi, J., dissenting in part). Here, however, petitioners are neither respondents' treating physicians nor the employers of respondents' treating physicians. Petitioners' coverage decisions, then, are pure eligibility decisions, and *Pegram* is not implicated.

## V

We hold that respondents' causes of action, brought to remedy only the denial of benefits under ERISA-regulated benefit plans, fall within the scope of, and are completely pre-empted by, ERISA § 502(a)(1)(B), and thus removable to federal district court. The judgment of the Court of Appeals is reversed, and the cases are remanded for further proceedings consistent with this opinion.[7]

*It is so ordered.*

---

[7] The United States, as *amicus,* suggests that some individuals in respondents' positions could possibly receive some form of "make-whole" relief under ERISA § 502(a)(3). Brief for United States as *Amicus Curiae* 27, n. 13. However, after their respective District Courts denied their motions for remand, respondents had the opportunity to amend their complaints to bring expressly a claim under ERISA § 502(a). Respondents declined to do so; the District Courts therefore dismissed their complaints with prejudice. See App. JA-147 to JA-148; *id.,* at JA-298; App. B to Pet. for Cert. in No. 02-1845, pp. 34a-35a; App. B to Pet. for Cert. in No. 03-83, p. 40a. Respondents have thus chosen not to pursue any ERISA claim, including any claim arising under ERISA § 502(a)(3). The scope of this provision, then, is not before us, and we do not address it.

JUSTICE GINSBURG, with whom JUSTICE BREYER joins, concurring.

The Court today holds that the claims respondents asserted under Texas law are totally preempted by § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA or Act), 29 U. S. C. § 1132(a). That decision is consistent with our governing case law on ERISA's preemptive scope. I therefore join the Court's opinion. But, with greater enthusiasm, as indicated by my dissenting opinion in *Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U. S. 204 (2002), I also join "the rising judicial chorus urging that Congress and [this] Court revisit what is an unjust and increasingly tangled ERISA regime." *DiFelice* v. *AETNA U. S. Healthcare*, 346 F. 3d 442, 453 (CA3 2003) (Becker, J., concurring).

Because the Court has coupled an encompassing interpretation of ERISA's preemptive force with a cramped construction of the "equitable relief" allowable under § 502(a)(3), a "regulatory vacuum" exists: "[V]irtually all state law remedies are preempted but very few federal substitutes are provided." *Id.*, at 456, 457 (internal quotation marks omitted).

A series of the Court's decisions has yielded a host of situations in which persons adversely affected by ERISA-proscribed wrongdoing cannot gain make-whole relief. First, in *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U. S. 134 (1985), the Court stated, in dicta: "[T]here is a stark absence—in [ERISA] itself and in its legislative history—of any reference to an intention to authorize the recovery of extracontractual damages" for consequential injuries. *Id.*, at 148. Then, in *Mertens* v. *Hewitt Associates*, 508 U. S. 248 (1993), the Court held that § 502(a)(3)'s term "'equitable relief' . . . refer[s] to those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Id.*, at 256 (emphasis in original). Most recently, in *Great-West*, the

Court ruled that, as "§ 502(a)(3), by its terms, only allows for *equitable* relief," the provision excludes "the imposition of personal liability . . . for a contractual obligation to pay money." 534 U. S., at 221 (emphasis in original).

As the array of lower court cases and opinions documents, see, *e. g.*, *DiFelice; Cicio v. Does*, 321 F. 3d 83 (CA2 2003), cert. pending *sub nom. Vytra Healthcare v. Cicio*, No. 03–69 [REPORTER'S NOTE: See *post*, p. 933], fresh consideration of the availability of consequential damages under § 502(a)(3) is plainly in order. See 321 F. 3d, at 106, 107 (Calabresi, J., dissenting in part) ("gaping wound" caused by the breadth of preemption and limited remedies under ERISA, as interpreted by this Court, will not be healed until the Court "start[s] over" or Congress "wipe[s] the slate clean"); *DiFelice*, 346 F. 3d, at 467 ("The vital thing . . . is that either Congress or the Court act quickly, because the current situation is plainly untenable."); Langbein, What ERISA Means by "Equitable": The Supreme Court's Trail of Error in *Russell, Mertens*, and *Great-West*, 103 Colum. L. Rev. 1317, 1365 (2003) (hereinafter Langbein) ("The Supreme Court needs to . . . realign ERISA remedy law with the trust remedial tradition that Congress intended [when it provided in § 502(a)(3) for] 'appropriate equitable relief.'").

The Government notes a potential amelioration. Recognizing that "this Court has construed Section 502(a)(3) not to authorize an award of money damages against a *nonfiduciary*," the Government suggests that the Act, as currently written and interpreted, may "allo[w] at least some forms of 'make-whole' relief against a breaching *fiduciary* in light of the general availability of such relief in equity at the time of the divided bench." Brief for United States as *Amicus Curiae* 27–28, n. 13 (emphases added); cf. *ante*, at 220 ("entity with discretionary authority over benefits determinations" is a "plan fiduciary"); Tr. of Oral Arg. 13 ("Aetna is [a fiduciary]—and CIGNA is for purposes of claims processing."). As the Court points out, respondents here de-

clined the opportunity to amend their complaints to state claims for relief under § 502(a); the District Court, therefore, properly dismissed their suits with prejudice. See *ante,* at 221, n. 7. But the Government's suggestion may indicate an effective remedy others similarly circumstanced might fruitfully pursue.

"Congress . . . intended ERISA to replicate the core principles of trust remedy law, including the make-whole standard of relief." Langbein 1319. I anticipate that Congress, or this Court, will one day so confirm.