**Anith Joan HARRIS Plaintiff,**

v.

**PEPSI BOTTLING GROUP, INC., Location # 42 Defendant.**

**No. CIV. 05–275–GFVT.**

United States District Court, E.D. Kentucky, Pikeville Division.

June 30, 2006.

John H. Callis, III, Kirk Law Firm, Paintsville, KY, Kenneth Carl Smith, III, Kirk Law Firm, Catlettsburg, KY, for Plaintiff.

Donald H. Combs, Combs & Combs, P.S.C., Pikeville, KY, for Defendant.

## ORDER

VAN TATENHOVE, District Judge.

This matter is before the Court for consideration of cross motions for summary judgment filed by Plaintiff Anith Joan

Harris and Defendant Pepsi Bottling Group, Inc., Location # 42 ("PBG"). [Records No. 7 and 10]. Harris appeals PBG's denial of certain life insurance proceeds she claims are owed to her pursuant to her late husband's coverage under the PBG Life Insurance Plan (the "Plan"). The Plan is covered by the Employee Retirement Income Security Act of 1974 (ERISA) (29 USCS §§ 1001 et seq.). PBG contends that Harris failed to exhaust her administrative remedies as required prior to bringing suit under ERISA and her appeal ought to be dismissed. The Court will construe PBG's motion for summary judgment as a motion to dismiss and will grant the motion. The Court agrees that Harris failed to exhaust her administrative remedies.

## I.

## BACKGROUND

Plaintiff Anith Harris was married to Phillip M. Harris. Mr. Harris was an employee of PBG and was covered for certain life insurance benefits through the PBG Life Insurance Plan. Ms. Harris is listed as the sole beneficiary. [Records No. 1, Attach. 1, and 4]. Mr. Harris became totally disabled beginning on February 26, 1996, and retired from PBG on April 1, 2000, at the age of 58. [Records No. 1, Attach. 1, and 7, Attach. 3]. Mr. Harris never returned to work from his date of disability to the date of his retirement. [Record No. 11, Attach. 1]. Mr. Harris passed away in March 2001. [Record No. 1, Attach. 1]. Upon the death of Mr. Harris, PBG paid Ms. Harris $5,000 under the Plan. *Id.*

Ms. Harris argues that under the 1996 Summary Plan Description ("SPD"), the amount of coverage of life insurance after retirement is reduced to 70% at the age of 58. In the case of Mr. Harris, with the reduction figured in, Ms. Harris argues that Mr. Harris's life insurance coverage should have resulted in a payment of $35,000 to Ms. Harris upon her husband's death, and therefore, PBG still owes her $30,000 under the Plan. [Record No. 1, Attach. 1].

PBG argues that Ms. Harris improperly bases her claim on one page of the 1996 SPD which addresses those employees working full time immediately preceding retirement. [Record No. 11]. PBG contends that the section properly addressing Mr. Harris states in part,

If you become totally and permanently disabled, your basic life insurance will continue as long as you receive LTD disability benefits. This insurance will end when you reach age 65, or when your retirement begins, whichever is earlier.

[Record No. 11]. Since Mr. Harris retired prior to his death and began receiving retirement benefits, Mr. Harris had no claim to insurance benefits under the 1996 Plan. However, Mr. Harris never participated under the 1996 Plan. Rather, the Plan became effective for members of Mr. Harris's union on May 1, 1996, after Mr. Harris became totally and permanently disabled. Furthermore, if one were disabled when coverage began under the 1996 "Flex Plan," he could only participate in the Plan after returning to work. [Record No. 11, citing the 1996 SPD at 31]. Since Mr. Harris never returned to work after his disability, he was never covered by the 1996 SPD; PBG paid Ms. Harris $5,000 under the terms of the 1991 SPD, under which Mr. Harris remained covered. [Record No. 11]. PBG argues that if the 1996 SPD did cover Mr. Harris, then Ms. Harris was not even entitled to the $5,000 paid to her by the Plan.

On May 10, 2004, Ms. Harris, via counsel, submitted a claim for life insurance benefits to the Plan in the form of a demand letter. In the letter, she claimed that Mr. Harris's receipt of long-term dis-

ability benefits entitled him to status as an active employee, rather than a retiree. [Record No. 7, Attach. 3]. PBG denied the claim via a letter dated August 3, 2004, essentially explaining to Ms. Harris the above-referenced argument that PBG currently makes. In the letter, PBG explicitly put Ms. Harris on notice that her claim was a claim for benefits within the meaning of ERISA. Furthermore, the letter noticed Ms. Harris of the right to appeal PBG's denial of benefits:

> You have the right under ERISA to appeal this adverse determination. To do so, you must submit a written appeal within sixty days of your receipt of this letter .... You may submit any additional information or documentation relevant to your claim for benefits. In the event you receive an adverse determination on appeal, you have the right under ERISA to bring civil action pursuant to section 502(a) of ERISA.

[Record No. 7, Attach. 3].

Ms. Harris did not appeal the denial of benefits with the Plan; rather, she filed her current Complaint in Johnson Circuit Court on August 22, 2005. Defendant noticed removal to this Court on September 6, 2005.

## II.

## DISCUSSION

### A. Exhaustion of Administrative Remedies

■ ERISA by its terms does not specifically require a claimant to exhaust administrative remedies before resorting to civil action. Nevertheless, "it is well settled that ERISA plan *beneficiaries* must exhaust administrative remedies prior to bringing suit for recovery on an individual claim." *Hill v. Blue Cross & Blue Shield,* 409 F.3d 710, 717 (6th Cir.2005) (emphasis added) (citing *Costantino v. TRW, Inc.,* 13 F.3d 969, 974 (6th Cir.1994)). Harris ar-

gues that while plan participants must exhaust their administrative remedies prior to seeking review in this Court, the same requirement does not apply to plan beneficiaries. [Record No. 9, Attach. 1]. The argument is unsupported by precedent. The Sixth Circuit has found that ERISA's exhaustion of administrative remedies requirement not only applies to beneficiaries but also to assignees of participants. *See Prudential Property and Cas. Ins. v. Delfield Co. Group Health Plan,* 187 F.3d 637, 1999 WL 617992, at *2 (6th Cir.1999) (citing *Weiner v. Klais and Co., Inc.,* 108 F.3d 86 (6th Cir.1997); *Baxter v. C.A. Muer Corp.,* 941 F.2d 451, 453–54 (6th Cir.1991)).

■ Courts have carved out an exception to the exhaustion-of-administrative-remedies rule when exhaustion would prove futile. A court is "obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 419 (1998) (citing, *inter alia, Costantino v. TRW Inc.,* 13 F.3d 969 (6th Cir.1994)). In order to successfully argue the futility of exhaustion, a claimant bears the burden of proving futility beyond mere conclusory allegations. Rather, the claimant must make a "clear and positive" indication of futility. *Id.* (citations omitted). The claimant must show that " 'it is certain that [her] claim will be denied on appeal, not merely that [she] doubts that an appeal will result in a different decision.' " *Id.* (quoting *Lindemann v. Mobil Oil Corp.,* 79 F.3d 647, 650 (7th Cir.1996); citing *Communications Workers of Am. v. AT & T,* 40 F.3d 426 (D.C.Cir.1994)).

The above-cited cases indicate that the exhaustion requirement must be taken seriously, lest the futility exception eviscerate the rule. Harris relies heavily on *Costantino v. TRW, Inc.,* for the position that resort to the administrative appeals pro-

cess would have been futile in her case. 13 F.3d 969 (6th Cir.1994); [Record 9, Attach. 1]. The facts in *Costantino* are different from the current case. In *Costantino*, the claimant challenged the very legality of the defendant's amended plan and the constitutionality of retroactive provisions in the plan. *Id.* at 975. If the provisions of the plan challenged as illegal turned out to be legal, then the original payment to the claimant under the plan would have been correct. Under those circumstances, the judge determined that the defendant, in reliance on the potentially illegal provisions of the plan, would not change the method of calculating benefits in an administrative appeals process, thus making exhaustion futile. *Id.* Furthermore, the district court was more capable of evaluating the constitutional challenges to the plan than the defendant would have been. *Id.* Under these circumstances, the 6th Circuit found that the district judge did not abuse his discretion in excusing non-exhaustion.

In the current case, Harris does not allege that the Plan under which she claims entitlement contains illegal provisions that affected the outcome of her benefits. Her claim is for payment of an individual claim under the Plan as is. Her argument appears to be that PBG misconstrued how the Plan should operate with regard to her husband's benefits. This is a factual issue, and the Plan administrator was in a prime position to reexamine her claims on appeal.

The entire administrative record, including the 1996 Benefits Book or correspondence that the parties may have had prior to Harris's May 10, 2004 demand letter, is not before the Court. Therefore, the Court cannot comment on the validity of Harris's claims at this stage. Nevertheless, the Court cannot say that the administrative appeals process would have been futile. First, Harris avers in her May 10, 2004 demand letter that Mr. Harris should have been treated as an active employee, not a retiree, for purposes of calculating life insurance benefits. Although PBG apparently was not persuaded by her averment, on administrative appeal, Harris could have easily pointed out the precise language in the Plan which led her to her belief. Furthermore, Harris could have appealed claiming that her interpretation of any language indicating that her husband should be treated as an active employee for insurance purposes is a reasonable one and potentially enforceable in this Court. It simply is not a foregone conclusion that the PBG would not have been receptive to Harris's argument, if supported by specific evidence.

Most important, in the August 3, 2004, letter denying Harris's claim, PBG outlines exactly why it came to the conclusion that it did. If Harris believed that PBG reached an erroneous conclusion, as she does in her Complaint, then there is no reason why she could not have specifically articulated to the Plan administrator the error that PBG made. Furthermore, Harris makes no "clear and positive" indication in the record that PBG would have been unresponsive in the face of evidence that it erred.[1]

---

**1.** Harris's case is distinguishable from *Fallick v. Nationwide Mut. Ins. Co.*, in which the Sixth Circuit held that the Fallick's failure to exhaust administrative should be excused as futile. 162 F.3d 410 (6th Cir.1998). In that case, Fallick argued:

> Nationwide has consistently defended its long-standing policy and has yet to provide more than but a cursory explanation of its methodology. Moreover, it has established unequivocally that it will continue to use data supplied by the Health Insurance Association to calculate its reimbursement determinations despite evidence that this policy violates the actual terms of the Nationwide Plan.

*Id.* at 420. Fallick successfully established a long record that proved Nationwide would

In *Costantino,* the Court lists eight purposes served by the requirement to exhaust administrative remedies. *Costantino* at 975. The Court states, "If these purposes would not be furthered, there would be no sense in exhausting administrative remedies." *Id.* Harris argues that the *Costantino* purposes behind the exhaustion requirement would not be served in her case. Her argument is devoid of factual support and simply restates the purposes themselves. [Record No. 9, Attach. 1].

The first *Costantino* purpose behind the exhaustion requirement alone—which is to help reduce the number of frivolous lawsuits under ERISA—illustrates why Harris cannot successfully argue the futility of exhaustion with the required clarity. *Id.* Although the Court in no way impugns the merit of Harris's claim, if Harris had appealed, she would have had the opportunity to give specific and articulable reasons of how PBG erred in its determination and point out information in the Plan on which PBG *ought* to rely. She would be required to do no less in this Court if her case were to proceed to briefing on the merits. If PBG had in turn thoroughly addressed Harris's arguments and nevertheless came to the same conclusion, then Harris would have been in a better position to determine if her original concerns were assuaged by PBG or whether review by this Court was necessary.

PBG argues that because Harris did not plead that exhaustion of administrative remedies in this case would be futile, her appeal must be dismissed *per se* for failure to exhaust administrative remedies. In support of its position, PBG cites to the Eleventh Circuit. [Record No. 12]; *Leggett v. Provident Life and Accident Ins. Co.,* No. 6:02–CV–1032ORL22KRS, 2004

WL 291223, at *15 (M.D.Fla.2004) (citing *Byrd v. MacPapers, Inc.,* 961 F.2d 157, 160–61 (11th Cir.1992)). While the Sixth Circuit has yet to weigh in on the issue, other courts see the issue differently. *See Moore v. ABB Power T & D Co.,* No. IP 00–0085–C H/G, 2000 WL 1902185, at *1, 2000 U.S. Dist. LEXIS 18920, at *2–3 (S.D.Ind.2000) (holding that exhaustion of remedies is not an element of an ERISA action, but rather an affirmative defense. As such, a claimant generally "has no obligation to anticipate in his complaint an affirmative defense and include allegations intended to negate it."). This Court need not reach this issue. For the reasons stated above, Harris's allegations subsequent to her Complaint are insufficient to carry her burden of proving that the administrative appeals process would have been clearly futile. [*See* Record No. 9, Attach. 1].

**B.  State Law Claim for Breach of Contract**

■  In Count II of Harris's Complaint, Harris alleges that Mr. Harris had an enforceable contract with PBG to award Ms. Harris life insurance proceeds upon Mr. Harris's death. [Record No. 1, Attach. 1]. The breach-of-contract claim is for the same life insurance proceeds sought in Count I under the Plan covered by ERISA. Therefore, Count II is pre-empted by ERISA and must be dismissed. *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (holding that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.").

likely continue to evade his inquires in the future, making appeal futile. Here, Harris provides the Court with no basis to conclude

that PBG would have been unresponsive or evasive to a direct rebuttal to its denial of her claim.

## III.

## CONCLUSION

The Court must finally conclude whether Harris's claim should be dismissed with or without prejudice. PBG denied Harris's claim via letter dated August 3, 2004. The letter provided Harris with notice that she had sixty days from receipt of the letter to appeal PBG's decision. Harris filed her appeal in state court, which PBG then removed to this Court, on August 31, 2005. [R. 1, Attachment 1]. Under these circumstances, because Harris's opportunity to administratively appeal has expired, dismissal with prejudice is appropriate. *See Dozier v. Sun Life Assurance Co.*, No. 6:04–291–DCR, 2005 WL 1405117, 200 U.S. Dist. LEXIS 19642 (E.D.Ky.2005) (citing *Gayle v. UPS*, 401 F.3d 222 (4th Cir.2005)).

Accordingly, for the reasons discussed herein, it is hereby **ORDERED** that:

(1) Pepsi Bottling Group's Motion for Summary Judgment, which the Court construes as a motion to dismiss [Record No. 7], is **GRANTED**;

(2) Harris's Motion for Summary Judgment [Record No. 10] is **DENIED**;

(3) Harris's Complaint [Record No. 1, Attach. 1] is **DISMISSED WITH PREJUDICE**;

(4) any other pending motions are **DENIED** as **MOOT**;

(5) this action is **STRICKEN** from the Court's active docket; and

(6) separate judgment shall be entered contemporaneously herewith.