**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0569n.06
Filed: September 19, 2008

**Nos. 07-3586 & 07-3587**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HENRY L. BANKS & GENUS R. SCRIVENS, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED |
| VIC ALEXANDER, | ) ) | STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellee. | ) ) | |

Before: MARTIN, ROGERS, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Henry Banks and Genus Scrivens brought a state-law action in state court against Vic Alexander, a union official. Because the allegedly breached duties arose from a collective-bargaining agreement, federal law completely preempts their claims and permitted Alexander to remove the claims to federal court. We therefore uphold the district court's removal order and its dismissal of the complaint.

I.

Henry Banks and Genus Scrivens were members of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 87 ("Local 87"), which represents Delphi Corporation employees. As Delphi employees, Banks and

Scrivens participated in the company's Quality Network Suggestion Plan, a program that gives employees an opportunity to receive financial compensation for submitting suggestions that result "in better, less expensive ways of doing things, improved quality, customer satisfaction and enthusiasm, or safety, or reduced waste." JA 20. Under the plan's terms, suggestions are evaluated, and financial rewards determined, by a labor-management committee known as the joint facility team. As vice president of Local 87, Vic Alexander served on the joint facility team.

In March 2006, Banks and Scrivens filed separate lawsuits against Alexander in Ohio state court. Their complaints alleged that, under the terms of the suggestion plan, Alexander was charged with a duty of "ensuring that submitted suggestions . . . [were] properly considered and compensated for." JA 13, 189. Alexander breached that duty, said Banks and Scrivens, by "fail[ing] to ensure that [they were] . . . compensated for suggestions [they] submitted." JA 13, 189.

Alexander removed the actions to federal court, where they were consolidated and where Alexander filed a motion to dismiss each lawsuit for failure to state a claim. Banks and Scrivens moved to remand the actions, arguing that the district court lacked subject-matter jurisdiction over them because the complaints contained only state-law claims for relief. Alexander responded that the doctrine of complete preemption gave the court jurisdiction over the dispute and that the court should dismiss the actions as a matter of law. Agreeing, the district court held that the plaintiffs' state-law claims alleged a breach of the union's duty of fair representation and that such claims are completely preempted by § 9(a) of the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a).

The district court also granted Alexander's motion to dismiss, reasoning that union officials cannot be held liable in duty-of-fair-representation lawsuits.

II.

We give fresh review to a district court's assessment of its jurisdiction. *See Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003). "A state-court action may be removed to federal court if it qualifies as a civil action . . . of which the district courts of the United States have original jurisdiction . . . ." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 474 (1998) (internal quotation marks omitted). When the defendant is a citizen of the state in which the action is brought, as Alexander is here, the defendant still may remove the case if it falls within the federal-question jurisdiction of the federal courts. *See Aetna Health Inc. v. Davila*, 542 U.S. 206, 207 (2004); 28 U.S.C. § 1441(b). Ordinarily, courts must determine the presence or absence of federal-question jurisdiction within the confines of the well-pleaded complaint rule, "which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). And because federal preemption ordinarily arises as a defense, it normally does not provide a sufficient basis for removal when a plaintiff has chosen to assert only state-law causes of action. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

But the doctrine of complete preemption, "an independent corollary to the well-pleaded complaint rule," creates a narrow exception. *Caterpillar*, 482 U.S. at 393 (internal quotation marks

omitted). Some federal statutes have such broad preemptive force that they "convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life*, 481 U.S. at 65. Accordingly, a claim that "comes within the scope of [such a] cause of action, even if pleaded in terms of state law, is in reality based on federal law" and is thus removable. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, is one statute (among a few statutes) that has complete preemptive force. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23–24 (1983); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560 (1968). While the classic § 301 preemption case arises from a state-law breach of contract claim, "the pre-emptive force of § 301 extends beyond state-law contract actions" to some state-law tort actions by an employee against his union or employer. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 369 (1990). Section 301 preempts a state-law tort action "if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement." *Id*. A claim meets this test, we have explained, if (1) "the rights claimed by the plaintiff were created by the collective bargaining agreement," or (2) "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004).

These lawsuits meet both criteria. As we read the complaints, "the duty on which [the plaintiffs] relied as the basis of their tort suit was one allegedly assumed by the Union in the

collective-bargaining agreement." *Rawson*, 495 U.S. at 370. The complaints, indeed, say as much: "For the [Suggestion] Plan, Mr. Alexander is charged with ensuring that submitted suggestions from Plaintiff[s] and others are properly considered and compensated for. . . . [I]n violation of his alleged duties of ensuring proper payment and or consideration of employee suggestions, [Alexander] failed to ensure that [Banks and Scrivens] were fully and or properly compensated for suggestions [they] submitted." JA 13, 189. Elsewhere in their complaints, Banks and Scrivens repeatedly invoke the duties that the plan imposed on Alexander. JA 13 ¶ 9, 189 ¶ 9 ("Mr. Alexander intentionally or recklessly failed to discharge his responsibilities of ensuring proper payment."); JA 13 ¶ 11, 189 ¶ 11 ("Mr. Alexander has not been faithfully discharging his duties as to the Suggestion Plan . . . ."); JA 13 ¶ 17, 189 ¶ 17 ("[Alexander] failed in his duty and responsibility to ensure proper consideration and or payment . . . ."); JA 14 ¶ 25, 190 ¶ 25 ("[Alexander] refus[ed] to properly consider the suggestions made to Delphi . . . ."). We see no reason not to take Banks and Scrivens at their word, which is to say that Alexander allegedly violated a duty created by the terms of the suggestion plan.

One cannot resolve their claims, moreover, without interpreting the collective-bargaining agreement. Banks and Scrivens again admit as much in their brief, arguing that while the proper inquiry is "whether proof of the state law claim require[s] interpretation of the collective bargaining agreement," "no CBA was implicated here but merely the Suggestion Plan." Br. at 9. Yet as the district court found, after Banks and Scrivens failed to respond to Alexander's affidavit evidence below, Delphi and the union collectively bargained the suggestion plan, and it forms part of the

CBA. Plaintiffs, at any rate, have framed their complaints in a way that makes resort to the suggestion plan inevitable. How else is a court to know whether plaintiffs' received "proper consideration and . . . payment," JA 13, 189, for their submitted suggestions than by looking to the terms and conditions of the Plan? To be sure, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation" does not by itself mean that a claim is preempted. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). But when consultation becomes necessary construction, the complaint no longer can claim independence from the CBA.

It is true that § 301 does not preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994) (internal quotation marks omitted). But Banks and Scrivens "ha[ve] not established [or asserted] the existence of any external regime of state law that would allow [them] to allege violations of rights independent from the rights created by the CBA." *Mattis*, 355 F.3d at 907. They instead have grounded their claims in the requirements of the suggestion plan. Nor is this "a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society." *Rawson*, 495 U.S. at 371. The long and the short of it is that the complaints amount to nothing more than an allegation that Alexander breached duties imposed on him by the suggestion plan, and parties may not avoid preemption by "relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." *Livadas*, 512 U.S. at 123 (internal quotation marks omitted).

No matter, Banks and Scrivens argue: Because they sued a *union official*, not the union itself, their claims fall outside the scope of § 301. But such artful pleading cannot defeat preemption under the Act. Alexander worked on the joint facility team in connection with his duties as vice president of Local 87. And what the Court has said about breach-of-contract claims applies with equal force to state-law tort actions: "When a union breach of contract is alleged, that the plaintiff seeks to hold the agents liable instead of the principal does not bring the action outside the scope of § 301." *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 247 (1962).

Much of the briefing before this court addressed the issue of whether § 9(a) of the NLRA completely preempts state-law claims that come within its scope. We need not reach that issue in this case. Because Banks and Scrivens explicitly allege that Alexander violated a duty imposed on him by the suggestion plan, and because that duty has no "existence independent of the collective-bargaining agreement," *Rawson*, 495 U.S. at 369, their state-law claims fall "within the scope" of § 301. As such, their claims may be removed to federal court regardless of whether § 9(a) has complete preemptive force or not.

III.

Banks and Scrivens did not, in their initial brief, make any argument for reversing the district court's dismissal of their claims. "By failing to provide the court with any developed legal argument with regard to the [motion to dismiss], [they] ha[ve] waived any argument [they] might have." *Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004).

IV.

For these reasons, we affirm.