**Hilda SARKISYAN and Grigor Sarkisyan, Plaintiffs,**

v.

**CIGNA HEALTHCARE OF CALIFOR-NIA, INC., Cigna Healthcare, Inc., and Does 1–100, inclusive, Defendants.**

**Case No. CV 09–00335 GAF (RCx).**

United States District Court,
C.D. California.

April 16, 2009.

Mark J. Geragos, Shelley Kaufman, Tamar G. Arminak, Geragos & Geragos, Los Angeles, CA, for Plaintiffs.

Debra Wong Yang, Richard J. Doren, Rodney Joseph Stone, Heather Lynn Richardson, Gibson Dunn and Crutcher, Los Angeles, CA, for Defendants.

## MEMORANDUM & ORDER REGARDING MOTION TO DISMISS

GARY ALLEN FEESS, District Judge.

### I. INTRODUCTION

Plaintiffs Grigor and Hilda Sarkisyan initiated the present lawsuit against defen-

dants CIGNA Healthcare of California, Inc. and CIGNA Healthcare, Inc. (collectively, "CIGNA") on December 18, 2008 in Los Angeles Superior Court for injuries they suffered after their minor daughter, Nataline, died of liver failure. Plaintiffs allege that CIGNA, the administrator of Plaintiffs' employee benefit health plan, wrongfully denied coverage for a liver transplant that may have saved Nataline's life, and have asserted claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unfair business practices under section 17200 of the California Business & Professions Code, and intentional infliction of emotional distress. Plaintiffs seek compensatory and punitive damages and permanent injunctive relief, as well as prejudgment interest, reasonable attorneys' fees, and court costs.

CIGNA removed the case to this Court on January 15, 2009. Presently before the Court is CIGNA's motion to dismiss Plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. CIGNA contends that Plaintiffs' claims are preempted by sections 502(a) and 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a), 1144(a), because the claims challenge or relate to a denial of benefits under an employee benefit plan that is subject to ERISA. The Court agrees that ERISA preempts Plaintiffs' breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices claims because they are directly related to CIGNA's denial of benefits. Accordingly, CIGNA's motion to dismiss those claims is **GRANTED,** and the claims are **DISMISSED WITH PREJUDICE.** The Court concludes, however, that ERISA does not preempt Plaintiffs' intentional infliction of emotional distress claim insofar as that claim is based on events that occurred during Plaintiffs' visit to CIGNA's headquarters more than one year after the coverage decision. Accord-

ingly, the motion to dismiss the emotional distress claim is **DENIED.** The Court explains its reasoning in detail below.

## II. BACKGROUND

In April 2005, Sonic Automotive, Inc. ("Sonic") and non-party Connecticut General Life Insurance Company ("CGLIC"), a CIGNA affiliate, entered into an Administrative Services Only Agreement whereby Sonic agreed to pay CGLIC to administer an employee health benefit plan that Sonic funds and provides to its employees ("Sonic Benefit Plan" or "Plan"). (See Lipar Decl. (Not. Removal) ¶ 3, Ex. A [Administrative Services Only Agreement at 1–5].) As a Sonic employee, plaintiff Grigor Sarkisyan enrolled himself and his wife in the Sonic Benefit Plan as of May 1, 2007. (Lipar Decl. (Not. Removal) ¶ 2.) Nataline was a beneficiary under the Plan. (Id.)

In 2004, when she was fourteen years old, Nataline was diagnosed with Acute Lymphoblastic Leukemia. (Compl. ¶ 16.) After Nataline underwent chemotherapy treatment, her physicians determined that her cancer was in remission. (Id.) In or about August 2007, however, Nataline relapsed and again underwent chemotherapy treatment. (Compl. ¶ 17.) Nataline's physicians subsequently determined that she required a bone marrow transplant, and in late-November 2007, Nataline underwent a transplant procedure using her brother's bone marrow. (Compl. ¶¶ 17–18.) Although the transplant was initially considered a success, Nataline's liver soon began to fail while she was still recovering from the procedure. (Compl. ¶¶ 18–19.) Nataline's physicians immediately informed her parents that a liver transplant was necessary to save Nataline's life. (Compl. ¶ 19.)

In early December 2007, Plaintiffs and Nataline's physicians from the UCLA Medical Center in Los Angeles, California

contacted CIGNA to report that Nataline would need a life-saving liver transplant, and to seek pre-authorization for the procedure. (Compl. ¶ 20.) CIGNA immediately sent a "Notice of Denial of Coverage" letter to Plaintiffs, declining to authorize the transplant. (Compl. ¶ 21.) Plaintiffs and Nataline's physicians appealed the denial of coverage, and on December 11, 2007, four of Nataline's physicians sent a joint letter to CIGNA requesting reconsideration of the coverage decision. (Compl. ¶¶ 22–23.) The physicians' letter highlighted the urgency of Nataline's situation, and their belief that Nataline was an excellent candidate for a liver transplant. (Compl. ¶ 23.) Nevertheless, CIGNA denied coverage on the ground that Nataline's medical benefits did not cover "experimental, investigational and unproven services." (Compl. ¶ 24.) Over the course of the next few days, Nataline's condition worsened. (Compl. ¶ 25.) On the afternoon of December 20, 2007, Nataline died of acute liver failure. (Compl. ¶ 26.)

## III. DISCUSSION

### A. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept all factual allegations pleaded in the complaint as true, and construe those facts and draw all reasonable inferences therefrom "in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996); *see also Stoner v. Santa Clara County Office of Educ.,* 502 F.3d 1116, 1120–21 (9th Cir. 2007). A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond doubt that the alleged facts, even if true, will not entitle the plaintiff to relief on the theories asserted. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007); *Stoner,* 502 F.3d at 1120–21; *see also Cahill,* 80 F.3d at 338. While a complaint

need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly,* 127 S.Ct. at 1964–65 (citation, alteration, and internal quotation marks omitted). Moreover, the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001). Finally, although the court generally cannot look beyond the pleadings, it may consider (1) any documents attached to the pleadings, *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1141 n. 5 (9th Cir.2003); (2) materials that are properly subject to judicial notice under Rule 201 of the Federal Rules of Evidence, *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986); and (3) evidence upon which the complaint "necessarily relies" so long as (a) the complaint refers to the document, (b) the document is central to the plaintiff's claim, and (c) no party questions the authenticity of the document, *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006).

### B. APPLICABILITY OF ERISA

ERISA governs "any employee benefit plan ... established or maintained ... by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). An "employee benefit plan" is

any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.

*Id.* § 1002(1). Here, the Administrative Services Only Agreement entered into between Sonic and CGLIC expressly states that "the Plan is subject to [ERISA]," and that Sonic, "in its role as plan sponsor, has adopted the program of employee welfare benefits described in Exhibit A ("Plan") for its employees and their eligible dependents." (Lipar Decl. (Not. Removal) ¶ 3, Ex. A [Administrative Services Only Agreement at 1].) The agreement also provides that CGLIC will review claims for benefits and make benefit determinations pursuant to ERISA. (*Id.* at 2.) In addition, the February 2007 Summary Plan Agreement, which describes the terms and conditions of the Sonic Benefit Plan, refers expressly to ERISA when setting forth the applicable "claim determination procedures" under the Plan. (Lipar Decl. (Not. Removal) ¶ 4, Ex. B [Summary Plan Agreement at 60–62].) Finally, Plaintiffs do not oppose CIGNA's assertion that the Sonic Benefit Plan is subject to ERISA, and, in fact, refer to the Plan in their papers as "an employee benefit contract." (Opp. at 13:1.) Accordingly, ERISA's applicability to the present lawsuit cannot reasonably be questioned. The Court therefore proceeds to determine the sole issue before it: whether ERISA preempts Plaintiffs' state law claims.

## C. PREEMPTION UNDER ERISA

In general, federal law may preempt state law by express provision, by implication, or because of a conflict between the federal and state laws. *New York State*

Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). As explained below, ERISA contains an express preemption provision whereby ERISA preempts state-law claims that relate to an ERISA benefit plan. 29 U.S.C. § 1144(a). But ERISA's civil enforcement provision, *id.* § 1132(a), also preempts by conflict any state-law claims that fall within its scope, even if those claims do not fall within the scope of the express preemption provision. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir.2005). Thus, "[t]here are two strands to ERISA's powerful preemptive force," *Cleghorn*, 408 F.3d at 1225, both of which are implicated in the present action.

### 1. SECTION 514(A): EXPRESS PREEMPTION

■ Section 514(a), ERISA's express preemption provision, provides that, subject to various exceptions not applicable here, ERISA "supersede[s] any and all State laws insofar as they may ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). The basic purpose of this provision is "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657, 115 S.Ct. 1671; *see also McClendon*, 498 U.S. at 142, 111 S.Ct. 478 (explaining that Congress enacted ERISA "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law").[1] A

---

1. In *McClendon*, the Court explained that the goal of section 514(a) is

> to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries. Allowing state based actions like the one at issue here would subject plans and plan sponsors to

burdens not unlike those that Congress sought to foreclose through § 514(a). Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

state law claim "relates to" an employee benefit plan " 'if it has a connection with or reference to such a plan.' " *Travelers,* 514 U.S. at 656, 115 S.Ct. 1671 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)); *accord Providence Health Plan v. McDowell,* 385 F.3d 1168, 1172 (9th Cir.2004).

■ A recent Ninth Circuit case, *Bast v. Prudential Ins. Co. of Am.,* 150 F.3d 1003 (9th Cir.1998), is directly on point and compels a finding that section 514(a) preempts Plaintiffs' claims to the extent that those claims allege a wrongful denial of benefits. Rhonda Bast was diagnosed with lung cancer in August 1991. *Id.* at 1005. Shortly thereafter, her physicians recommended that she undergo a bone marrow transplant. *Id.* On September 9, 1991, Bast's physicians contacted the defendant administrator of Bast's employer health insurance plan to request pre-authorization for the withdrawal, processing, and storage of Bast's bone marrow. *Id.* The defendant denied the request and stated that the bone marrow transplant was not covered by Bast's health insurance policy because the procedure was "investigational and/or experimental in nature." *Id.* After an appeal, however, the defendant reversed its decision in April 1992 upon determining that the procedure was in fact covered. *Id.* at 1006. But by then, the cancer had already metastasized to Bast's brain, disqualifying her from undergoing the procedure. *Id.* Bast died a short time later. *Id.* Bast's estate and her minor child sued the defendant administrator on various state law grounds, including breach of contract, breach of the implied duty of good faith and fair dealing, and emotional distress. *Id.* at 1006. The Ninth Circuit held that section 514(a) of ERISA preempted those claims because

the claims were directly related to the administration of an ERISA benefit plan. *Id.* at 1007–08.

Bast's holding accords with the great weight of authority in ERISA jurisprudence. For example, in *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court held that a common law claim "based on [an] improper processing of a claim for benefits under an employee benefit plan ... undoubtedly meet[s] the criteria for pre-emption under § 514(a)." *Id.* at 47–48, 107 S.Ct. 1549. The Ninth Circuit expressly adopted this rule in *Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 493 (9th Cir.1988) (per curiam). There, the court held that ERISA preempted the plaintiffs' breach of contract and breach of the implied duty of good faith and fair dealing claims because the claims were based on the insurance provider's failure to reimburse the plaintiffs for certain expenses relating to their son's care, and thus arose from the alleged improper processing of a claim of benefits. *Id.* at 491, 493–94. The Ninth Circuit reached a similar conclusion in *Spain v. Aetna Life Insurance Co.,* 11 F.3d 129 (9th Cir.1993) (per curiam). In *Spain,* a case that was very similar on its facts to Bast, the court held that section 514(a) preempted a wrongful death claim brought by a deceased cancer victim's survivors against an ERISA-covered employee benefit plan administrator that withdrew its prior authorization of a bone marrow transplant. 11 F.3d at 131–32. The court reasoned that a finding of preemption was appropriate because the plaintiffs sought damages "for the negligent administration of benefit claims," and therefore, their claim was directly related to "the administration and

Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement.

498 U.S. at 142, 111 S.Ct. 478 (citations omitted).

disbursement of ERISA plan benefits." *Id.* at 131.

Based on the well-established precedent in this area of federal jurisprudence, ERISA plainly preempts Plaintiffs' claims to the extent that Plaintiffs seek redress for what they claim to be CIGNA's wrongful denial of benefits to their daughter. Plaintiffs do not contend otherwise, but rather attempt to persuade the Court that they do not seek relief for the wrongful denial of benefits. The Court therefore analyzes the allegations pertaining to each of Plaintiffs' four claims to determine whether, and the extent to which, those claims are preempted.

### a. Breach of Contract

Plaintiffs allege in the complaint that CIGNA breached the Sonic Benefit Plan "by unreasonably refusing to pay, and continuing to withhold Policy benefits due and payable, under the terms of the Policy." (Compl. ¶ 37.) In addition, Plaintiffs aver that "CIGNA further breached the Policy by making unreasonable demands on Plaintiffs, improperly denying Plaintiffs' claim, misrepresenting the terms of the Policy and forcing Plaintiffs to institute this litigation to obtain their benefits." (Compl. ¶ 38.) The plain import of these allegations is that Plaintiffs' breach of contract claim arises out of CIGNA's denial of benefits. Plaintiffs essentially concede the point in their opposition papers. (*See* Opp. at 2:5–19.) Accordingly, the Court concludes that section 514(a) preempts Plaintiffs' breach of contract claim.

### b. Breach of the Implied Covenant of Good Faith & Fair Dealing

In their opposition papers, Plaintiffs emphasize that their breach of the implied covenant of good faith and fair dealing claim is based on their allegation that they were "wrongfully induced into entering into a CIGNA policy because CIGNA fraudulently represented to them that it would act in good faith ... while [administering] their insurance plan." (Opp. at 12:19–21.) Plaintiffs contend that this averment does not bring the claim within ERISA's scope because it relates to an act that occurred before Grigor Sarkisyan entered into the Sonic Benefit Plan and Nataline became a beneficiary thereof. However, the allegations set forth in the complaint directly contradict and undermine Plaintiffs' contention. For instance, in paragraph 47 of the complaint, Plaintiffs aver that CIGNA "tortuously [sic] breached [the] implied covenant of good faith and fair dealing ... by unreasonably withholding benefits due under the Policy, and by other conduct ... after accepting insurance premiums from Plaintiffs." (Compl. ¶ 47.) The "other conduct" to which Plaintiffs refer presumably entails "CIGNA's overall scheme to reduce the costs of legitimate insurance claims." (Compl. ¶ 51.) Plaintiffs cannot reasonably contend that these allegations do not relate to the Sonic Benefit Plan. Moreover, the conclusory assertion that CIGNA, "in [its] capacity as insurance agent[ ], induced Plaintiffs to purchase healthcare insurance coverage" (Compl. ¶ 11) falls well short of satisfying the heightened pleading requirement for fraud claims set forth in Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiffs cannot avoid that requirement by disguising their fraudulent inducement claim as a breach of the implied covenant of good faith and fair dealing claim. As pleaded, Plaintiffs' claim directly relates to CIGNA's denial of benefits, and is therefore preempted by section 514(a).[2]

---

**2.** The Court offers no opinion at this time as to whether section 514(a) would preempt a fraudulent inducement claim under present circumstances, because no such claim is presently before the Court.

### c. Unfair Business Practices

Plaintiffs allege in the complaint that CIGNA is currently violating section 17200 of the California Business and Professions Code[3] through its "continued misconduct under California laws regarding claims adjusting and denials and other unlawful and unfair business practices." (Compl. ¶ 3.) Specifically, Plaintiffs contend that CIGNA violated section 17200 by denying Plaintiffs' benefit claim without adequately investigating the claim and by retaining personnel who were not equipped "to conduct the necessary research, analysis, and investigation of Nataline's need for a life saving [sic] liver transplant." (Compl. ¶ 58.) They aver that CIGNA's denial was "intended to minimize its costs of paying the Policy's benefits to Plaintiffs and their daughter Nataline Sarkisyan, and other California residents similarly situated, and [to] maximize profits obtained through its collection of premiums," and that "[i]n handling, investigating, and adjusting ... Plaintiffs' claim, CIGNA systematically, methodically, and generally engaged in ... improper, unfair, fraudulent, unreasonable, and/or discriminatory claims practices directed at Plaintiffs and Nataline Sarkisyan and other insureds." (Compl. ¶¶ 29–30.) Plaintiffs admit in the complaint itself that these allegations are based on CIGNA's alleged "improper claims handling practices." (Compl. ¶ 32.) Thus, Plaintiffs' argument in their opposition papers that their section 17200 claims refer to "pre-plan activity" finds no support in the complaint. Accordingly, the Court concludes that section 514(a) preempts Plaintiffs' section 17200 claim.

### d. Intentional Infliction of Emotional Distress

█ Plaintiffs rest their emotional distress claim on two distinct events. First, they allege that they suffered emotional distress as a result of Nataline's death "after she was unable to receive a life saving [sic] liver transplant as a result of CIGNA's wrongful denial of her healthcare benefits." (Compl. ¶ 65.) For all of the aforementioned reasons, ERISA preempts the emotional distress claim to the extent that it is based on this allegation. However, Plaintiffs also allege that they suffered emotional distress because of the "verbal abuse" they suffered at the hands of CIGNA employees on October 29, 2008 when they visited CIGNA's headquarters in Philadelphia, Pennsylvania. (Compl. ¶ 67.) Plaintiffs aver that during their visit, CIGNA employees heckled them, and one CIGNA employee directed "a lewd hand gesture at Plaintiffs," causing Plaintiffs to suffer "severe emotional distress." (Compl. ¶¶ 67–69.) To the extent that Plaintiffs' emotional distress claim is premised upon the events of October 29, 2008, the claim falls outside of the scope of ERISA, and is therefore not preempted thereby, because the claim has "only a tenuous, remote, [and] peripheral connection" with CIGNA's administration of the Sonic Benefit Plan. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 984 (9th Cir.2001). Indeed, insofar as the claim is based on the events of October 29, 2008, it does not arise out of CIGNA's denial of coverage, nor does its resolution depend upon the Court's interpretation of the Plan's terms.

█ The question therefore remains whether Plaintiffs have pleaded sufficient facts to state a claim of emotional distress. Under California law, a claim of intentional interference with emotional distress requires proof of four elements: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of

---

**3.** Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court,* 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181, 202 (1991) (internal quotation marks omitted). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result." *Id.* (citation and internal quotation marks omitted).

■ Here, the allegations in the complaint, though perhaps thin, are sufficient to satisfy the notice pleading requirement set forth in Rule 8(a) of the Federal Rules of Civil Procedure. Plaintiffs allege that the conduct of CIGNA employees on October 29, 2008 was "extreme and outrageous so as to shock the conscience of a reasonable person," that the conduct was intentional and reckless, and that Plaintiffs suffered mental anguish and severe emotional distress as a direct result of that conduct. (Compl. ¶¶ 67–69.) Although CIGNA is technically correct that the relevant paragraphs do not allege that Plaintiffs "experienced any emotional distress or other injury resulting independently from the 'lewd hand gesture' or heckling that occurred in October 2008" (Reply at 4:26–5:1), this is the clear implication of the allegations in the complaint, particularly those set forth in paragraphs 67 to 69. To hold otherwise would be to promote form over substance. Accordingly, the Court concludes that Plaintiffs have pleaded sufficient facts to state a claim of intentional infliction of emotional distress based on the events of October 29, 2008.

## 2. SECTION 502(A): CONFLICT PREEMPTION

■ Even if the Court were to conclude that section 514(a) does not preempt Plaintiffs' claims, the breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices claims conflict with, and are therefore preempted by, ERISA's civil enforcement provision, set forth in section 502(a). Section 502(a) provides that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a) also establishes that a participant, beneficiary, or fiduciary may file suit under ERISA "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain other appropriate equitable relief ... to redress such violations or ... to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3).

■■ "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). Thus,

[i]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of' ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could

have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id.* at 210, 124 S.Ct. 2488 (citation omitted). Moreover, a state-law claim need not be strictly duplicative of a section 502(a) claim to be preempted. *See id.* at 216, 124 S.Ct. 2488. *Davila* therefore makes clear that, to the extent that Plaintiffs' claims are intended to rectify a wrongful denial of benefits promised under an ERISA-regulated plan, and not to remedy a violation of a legal duty independent of ERISA, the claims are preempted. *Id.* at 214, 124 S.Ct. 2488.

In *Cleghorn,* the Ninth Circuit applied these principles to a lawsuit initiated by the member of an employer benefit plan whose insurer denied a claim for reimbursement of costs the plaintiff incurred when obtaining emergency medical care. 408 F.3d at 1224. The plaintiff had sued the defendant insurer under the California Legal Remedies Act and section 17200 of the California Business and Professions Code. *Id.* The claims were based on an alleged violation of section 1371.4(c) of the California Health and Safety Code, which the plaintiff argued prohibited preauthorization requirements for emergency services. *Id.* After the insurer removed the case to federal court, the district court determined that ERISA preempted the plaintiff's claims and refused to remand the case. *Id.* The district court subsequently dismissed the case pursuant to Rule 12(b)(6) because the plaintiff failed to amend his complaint to add an ERISA claim. *Id.* at 1224–25. The Ninth Circuit upheld the dismissal, reasoning that "[t]he only factual basis for relief pleaded in [the plaintiff]'s complaint is the refusal of [the insurer] to reimburse him for the emergency medical care he received. Any duty or liability that [the insurer] had to reimburse him 'would exist here only because of [the insurer's] administration of ERISA-regulated benefit plans.'" *Id.* at 1226–27 (quoting *Davila,* 542 U.S. at 213, 124 S.Ct. 2488).

After reviewing Plaintiffs' complaint and the applicable plan documents, the Court concludes that Plaintiffs' claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices all fall within the scope of section 502(a)(1)(B) because Plaintiffs' only relevant connection to CIGNA with respect to these three claims is CIGNA's partial administration of the Sonic Benefit Plan. *See Davila,* 542 U.S. at 211, 124 S.Ct. 2488. In other words, CIGNA may be held liable pursuant to these claims only if Plaintiffs can prove that CIGNA's administration of the Sonic Benefit Plan was unlawful. Thus, CIGNA's liability under these claims would "derive[ ] entirely from the particular rights and obligations established by the benefit plan[ ]." *Id.* at 213, 124 S.Ct. 2488. Section 502(a)(1)(B) therefore preempts these claims. The same holds true with respect to Plaintiffs' intentional infliction of emotional distress claim, but only to the extent that the claim is premised upon a theory of wrongful denial of benefits. As discussed above, this claim is also premised upon the alleged wrongful behavior of CIGNA employees on October 29, 2008 at CIGNA's headquarters during Plaintiffs' visit. Presuming for purposes of discussion that CIGNA may be held vicariously liable for the tortious actions of its employees on that date, any such liability would have only an indirect connection to CIGNA's denial of benefits. Accordingly, section 502(a)(1)(B) does not preempt Plaintiffs' emotional distress claim, but only insofar

as the claim rests on the events of October 29, 2008.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that ERISA preempts Plaintiffs' breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair business practices claims.[4] Accordingly, CIGNA's motion to dismiss is **GRANTED** as to those claims, which are **DISMISSED WITH PREJUDICE.** To the extent that Plaintiffs seek redress for emotional distress resulting from the conduct of CIGNA employees on October 29, 2008, CIGNA's motion to dismiss Plaintiffs' intentional infliction of emotional distress claim is **DENIED** because that claim falls outside ERISA's preemptive reach. Plaintiffs shall have until *Monday, May 11, 2009* to file an amended complaint. Should Plaintiffs fail to amend their complaint by that date, the Court will remand their emotional distress claim to state court pursuant to 28 U.S.C. § 1367(c). The hearing previously scheduled for Monday, April 20, 2009 is **VACATED.**

**IT IS SO ORDERED.**

4. In reaching this conclusion, the Court is mindful of the possibility that a finding of ERISA preemption may ultimately deprive Plaintiffs of a meaningful remedy for CIGNA's denial of coverage, even if wrongful, because the benefits are no longer necessary in view of Nataline's death, and because "extracontractual, compensatory, and punitive damages are not available under ERISA." *Bast,* 150 F.3d at 1009. This is an unfortunate consequence of the compromise Congress made by enacting ERISA, but it cannot preclude a finding of preemption. *Id.* at 1009–10.