**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3005
_____

NEW JERSEY CARPENTERS AND THE TRUSTEES
THEREOF, as assignees of Edward Chatten and other
similarly situated workmen,

Appellant

v.

TISHMAN CONSTRUCTION CORPORATION OF NEW
JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2-13-cv-00379)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 14, 2014

Before:  McKEE, Chief Judge, CHAGARES, and
SHWARTZ, Circuit Judges.

(Filed: July 28, 2014)

Seth Ptasiewicz, Esq.
99 Wood Avenue South
Metro Corporate Campus I, Suite 307
Iselin, NJ 08830
          Counsel for Appellants

Gregory R. Begg, Esq.
Alexander X. Saunders, Esq.

Peckar & Abramson
70 Grand Avenue
River Edge, NJ 07661
     Counsel for Appellee

_____

OPINION

_____

CHAGARES, Circuit Judge.

In this case, we must decide whether the New Jersey Prevailing Wage Act, N.J. Stat. Ann. § 34:11-56.25, et seq. ("PWA") is completely preempted by either the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., or the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq. Because we conclude that neither statute completely preempts the PWA, the District Court was without jurisdiction to dismiss the plaintiffs' complaint. We will therefore vacate the judgment of the District Court and remand the action with instructions to remand it to state court.

I.

A.

The PWA provides that laborers on certain public works projects are to be paid the prevailing wage. N.J. Stat. Ann. § 34:11-56.27. It was enacted to "establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being." Id. § 34:11-56.25; see also Best v. C&M Door Controls, Inc., 981 A.2d 1267, 1271 (N.J. 2009). A "public work" falls within the PWA if it is "paid for in whole or in part out of the funds of a public body" (except work done pursuant to rehabilitation programs), or if at the time of entering into the contract, the property where the labor is performed is owned or substantially leased by a public body. N.J. Stat. Ann. § 34:11-56.26(5). The PWA applies to all contracts where the

2

total value of the project exceeds $14,187.00 if the work is being done for, or on the premises of, any municipality, or $2,000.00 if the work is being done for, or on the premises of, any other public entity. N.J. Admin. Code § 12:60-1.4(b) (2009).

The "prevailing wage" is defined as the "wage rate paid by virtue of collective bargaining agreements ["CBAs"] by employers employing a majority of workers of that craft or trade subject to said [CBAs], in the locality in which the public work is done." N.J. Stat. Ann. § 34:11-56.26(9). It is set every two years by the New Jersey Commissioner of Labor and Workforce Development ("Commissioner"). Id. § 34:11-56.30. To set the prevailing wage rate for each locality, the Commissioner references the rates paid in various CBAs — cash and benefits (including employer contributions) — in different parts of the state. Id. The prevailing wage must be specified in the contract between the awarding entity and contractor or subcontractor. Id. § 34:11-56.28. The actual amount of compensation cannot be below the prevailing wage rate, but may exceed it. Id.

The prevailing wage schedule that the Commissioner publishes for each locality contains a wage rate per hour and a fringe benefit rate per hour. Employers may count certain types of fringe benefits bestowed upon employees against the fringe benefit rate per hour. Employers providing benefits worth less than the fringe benefit rate per hour (or no benefits at all) must pay the balance to the employee in cash. The PWA does not mandate any specific types of fringe benefits, nor does it mandate that an employer provide fringe benefits at all.

In addition, the PWA requires that every contractor and subcontractor keep a record detailing the worker's name, his or her craft or trade, and actual hourly rate of wages paid to each worker. Id. § 34:11-56.29. The employer must preserve these records for two years. Id.

If a worker believes that he or she has been paid less than the prevailing wage, that worker may file a complaint with the Commissioner, who has the authority to investigate and administratively sanction violators. Id. §§ 34:11-56.34;

3

34:11-56.35. Such worker may also initiate a civil action to recover the full amount of the prevailing wage (less any wages actually received), regardless of any contract to the contrary. Id. § 34:11-40. The right to prevailing wages is inalienable, as "any agreement between such workman and the employer to work for less than such prevailing wage shall be no defense to the action." Id. Workers may bring this civil action themselves or "may designate an agent or representative to maintain" such an action on their behalf. Id.

## B.

We take the following facts from the plaintiffs' complaint, which we assume to be true for the purposes of a motion to dismiss. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). The workers at issue in this case were carpenters hired to work on the Revel Casino Project in Atlantic City, New Jersey. They contend that the Revel Casino Project is a "public work" within the meaning of the PWA because it received financial assistance in the form of incentives, tax exemptions, and tax reimbursements from the New Jersey Economic Development Authority ("EDA"). They claim that the EDA is a "public body" within the meaning of the Act. See N.J. Stat. Ann. § 34:11-56.26(4).

The carpenters contend that their employer, Simon/Watt, did not pay them fringe benefits as required by the PWA. They assigned these claims for unpaid prevailing wages to the plaintiffs, who describe themselves as employee benefit plans within the meaning of ERISA and trust funds within the meaning of the LMRA. The plaintiffs allege that the defendant, Tishman Construction Corp. of New Jersey, was the general contractor and/or construction manager on the Revel Casino Project and subcontracted certain carpentry work to Simon/Watt.

The plaintiffs initially brought suit in New Jersey state court, alleging violations of the EDA Act and PWA.[1] The

---

[1] The EDA Act simply requires that the New Jersey Economic Development Authority adopt rules requiring workers to be paid at least the prevailing wage (as defined by the Commissioner pursuant to the PWA) in connection with

4

defendant removed the case to federal court, asserting subject matter jurisdiction pursuant to the "complete preemption" doctrine. It contended that the complaint was completely preempted pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), because the plaintiffs' cause of action was actually one to collect benefits due. The defendant also claimed that the plaintiffs' claims were preempted by § 301 of the LMRA, 29 U.S.C. § 185, because resolution of the dispute involved interpretation of a CBA. After removal, the plaintiffs moved to remand, and the defendant moved to dismiss.

The District Court agreed with the defendant's characterization of the action and held that the plaintiffs' claims were completely preempted under ERISA § 502(a). It concluded that the action was properly removed because the plaintiffs "are ERISA participants seeking rights under an ERISA plan." Appendix ("App.") 15a. Although it did not directly address LMRA complete preemption, the court also noted that the complaint "seeks interpretation of the collective bargaining agreement." Id.

The District Court also concluded that the action was expressly preempted by ERISA § 514, 29 U.S.C. § 1144, and dismissed the complaint. It reasoned that because the plaintiffs themselves were employee benefit plans and fiduciaries within the meaning of ERISA, and because they sought to collect fringe benefits, their claims "relate[d] to" an ERISA-governed benefit plan and were preempted. Id. The plaintiffs timely appealed.

II.

We have jurisdiction over the final decision of the District Court pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of a motion to dismiss based on ERISA preemption is plenary. Pryzbowski v. U.S.

EDA projects (provided certain conditions are met). N.J. Stat. Ann. § 34:1B-5.1. In other words, it governs the scope of projects that are subject to the PWA. For our purposes, the substantive analysis is the same as that of the PWA: if the EDA Act applies, then the defendant owed the plaintiffs compensation as defined by the PWA.

5

Healthcare, Inc., 245 F.3d 266, 268 (3d Cir. 2001). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint has facial plausibility when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips, 515 F.3d at 231.

III.

Before we can reach the issue of whether the plaintiffs' claims are expressly preempted by ERISA § 514, we must first determine whether there is subject matter jurisdiction over the plaintiffs' PWA claims in federal court. Complete preemption under § 502(a) is a "jurisdictional concept," whereas express preemption under § 514 is a "substantive concept governing the applicable law." In re U.S. Healthcare, Inc., 193 F.3d 151, 160 (3d Cir. 1999). Because subject matter jurisdiction involves "a court's power to hear a case," we have an "independent obligation to determine whether subject-matter jurisdiction exists." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quotation marks omitted).

A cause of action does not typically "arise under" federal law unless a federal question appears on the face of a well-pleaded complaint. Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 8 (1983). The existence or expectation of a federal defense is insufficient to confer federal jurisdiction. Pryzbowski, 245 F.3d at 271. There exists a "narrow exception" to the well-pleaded complaint rule for instances where Congress "has expressed its intent to completely pre-empt a particular area of law such that any claim that falls within this area is necessarily federal in character." U.S. Healthcare, 193 F.3d at 160 (quotation marks omitted).

While other types of preemption operate only as federal defenses to state law claims, complete preemption "operates to confer original federal subject matter jurisdiction

6

notwithstanding the absence of a federal cause of action on the face of the complaint." Id. The Supreme Court has recognized the "complete preemption" doctrine in only three instances: § 301 of the LMRA, see Avco Corp. v. Machinists, 390 U.S. 557 (1968); § 502(a) of ERISA, see Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987); and §§ 85 and 86 of the National Bank Act, see Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003). The former two are relevant here.

A.

We begin with ERISA § 502(a), the only ground for complete preemption that the District Court found. ERISA provides for uniform federal regulation of pension benefit plans and welfare benefit plans. 29 U.S.C. § 1002(3). Congress enacted ERISA to ensure that benefit plan administration was subject to a single set of regulations and to avoid subjecting regulated entities to conflicting sources of substantive law. N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657 (1995). These concerns generally arise only when the provision of benefits requires "an ongoing administrative program." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11 (1987). ERISA included "expansive" preemption provisions, see ERISA § 514, 29 U.S.C. § 1144, "which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern," Aetna Health, Inc. v. Davila, 542 U.S. 200, 208 (2004) (quotation marks omitted). Congress preempted "state laws relating to plans, rather than simply to benefits." Fort Halifax, 482 U.S. at 11.

ERISA's civil enforcement mechanism, § 502(a), "is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," and permits removal. Aetna Health, 542 U.S. at 209 (quotation marks omitted). We have held that a claim is completely preempted, and thus removable, under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a); and (2) no other independent legal duty supports the plaintiff's claim. Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare

7

Reimbursement Plan, 388 F.3d 393, 400 (3d Cir. 2004); see also Aetna Health, 542 U.S. at 210. Because the test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied. See Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 328 (2d Cir. 2011).

The defendant contends that the suit is preempted because the plaintiffs seek to collect "delinquent fund contributions." Defendant's Br. 15. It contends that this cause of action overlaps with two portions of ERISA's comprehensive enforcement scheme: § 502(a)(1)(B), which allows a participant or beneficiary to recover benefits due "under the terms of his plan," and § 502(a)(3), which allows a participant, beneficiary, or fiduciary to seek equitable relief in order to enforce any provision of a plan. 29 U.S.C. § 1132(a). According to the defendant, because the remedies that the PWA offers mirror or supplement those that are provided for in ERISA's comprehensive enforcement scheme, ERISA completely preempts the PWA.

We disagree. Turning to the Pascack Valley test's second prong, courts have held that a legal duty is "independent" if it is not based on an obligation under an ERISA plan, or if it "would exist whether or not an ERISA plan existed." Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 950 (9th Cir. 2009). In other words, if the state law claim is not "derived from, or conditioned upon" the terms of an ERISA plan, and "[n]obody needs to interpret the plan to determine whether that duty exists," then the duty is independent. Gardner v. Heartland Indus. Partners, LP, 715 F.3d 609, 614 (6th Cir. 2013); accord Stevenson v. Bank of N.Y. Co., Inc., 609 F.3d 56, 62 (2d Cir. 2010).

The PWA creates just such an independent legal duty. The defendant's duty to pay prevailing wages derives from the PWA, not any ERISA plan. No interpretation of any ERISA plan is necessary in order to determine whether the carpenters were paid prevailing wages. The defendant would be required to pay prevailing wages regardless of whether any ERISA plan existed.

8

The PWA's independence is best understood by looking to the what the plaintiffs must prove to prevail. To determine whether the defendant is liable, a court must simply compare the amount that the carpenters were paid to the amount that they were owed under the PWA. If there is a deficiency, the defendant can make it up through cash, even if the deficiency concerns the benefit prong of the PWA. No reference to any ERISA plan is necessary. The statute simply requires that the Commissioner set a prevailing wage, and that employers engaged in public works projects pay it.

As such, the PWA is a law that regulates wages. "States have traditionally regulated the payment of wages," not the federal government. Massachusetts v. Morash, 490 U.S. 107, 119 (1989). Congress did not intend for ERISA to displace statutes that govern wages. See Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley, 37 F.3d 945, 959 (3d Cir. 1994). State actions to recover unpaid wages generally are not expressly preempted by ERISA, much less completely preempted. Cf. id. (viewing the Pennsylvania Prevailing Wage Act as an instance of wage regulation and concluding that it was not expressly preempted by ERISA § 514).

Pascack Valley provides an illustration of a similar independent duty. There, a hospital brought suit in state court against an ERISA plan for breach of contract. Pascack Valley, 388 F.3d at 395. The hosptial contended that it was not paid the proper amount for services rendered pursuant to the terms of a contract that was separate from any ERISA plan. Id. at 396. The plan removed the case to federal court, contending that the breach of contract claim was actually for benefits owed pursuant to an ERISA plan, and therefore completely preempted by ERISA § 502(a). Id. at 397. We held that removal was improper because resolution of the hospital's claim turned on the terms of an agreement that was separate from the ERISA plan. Id. at 402. In order to resolve the dispute, a court simply needed to compare the prices provided for in the agreement to the amounts that the hospital was paid. No analysis of the plan's terms was required. This was sufficient to create an independent legal duty, even though the patients who received services at the hospital

received them pursuant to the terms of the plan.  Id. at 403-04.[2]

As the obligation to pay prevailing wages is an independent legal duty, the second prong of the Pascack Valley test is not met.[3]  Therefore, the plaintiffs' claims are not completely preempted by ERISA § 502(a), and that section cannot provide the basis for federal court jurisdiction.[4]

---

[2] The District Court in this case also found the fact that one of the parties in this case was an ERISA plan was significant. We rejected a similar argument in Pascack Valley.  There, the plan argued that removal was proper because suits between plans and third parties that implicate benefit administration necessarily "arise under ERISA's federal common law." Pascack Valley, 388 F.3d at 399 (quotation marks omitted). We held that it was not the identity of the parties to the dispute that mattered, but whether the federal common law of ERISA provided an "element — essential or otherwise" of the plaintiff's state law claim.  Id.  Our focus was on the nature of the cause of action, not the identity of the parties.

[3] Because we conclude that the defendant cannot meet the second prong of the test, we need not decide whether it could have met the first prong.

[4] As we conclude that the District Court was without jurisdiction to consider whether the PWA is expressly preempted by ERISA § 514, we have no occasion to address that portion of the District Court's opinion.  See Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3d Cir. 1995) ("When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding [express] preemption."). Upon remand to state court, the defendant may still raise express preemption as a defense to the plaintiffs' PWA claim. We note, however, that we have held that Pennsylvania's PWA, which is substantially similar to the New Jersey PWA, was not expressly preempted, and that every other Court of Appeals to answer this question with respect to similar PWAs has found them not expressly preempted.  See Keystone Chapter, 37 F.3d at 945; see also Associated Builders & Contractors, Saginaw Valley Area Chapter v. Perry, 115 F.3d 386, 392-93 (6th Cir. 1997) (Michigan PWA not preempted

10

B.

The District Court did not decide whether removal was proper under LMRA § 301, or whether the LMRA completely preempted the plaintiffs' claims. The failure to reach the LMRA issue does not necessarily preclude us from addressing it on appeal. See Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 97 (3d Cir. 2008). It is appropriate for us to reach an issue that the district court did not if "the issues provide purely legal questions, upon which an appellate court exercises plenary review." Hudson United Bank v. LiTenda Mortg. Corp., 142 F.3d 151, 159 (3d Cir. 1998). Had the District Court reached these issues, our review would have been plenary. See Kline v. Sec. Guards, Inc., 386 F.3d 246, 251 n.3 (3d Cir. 2004) (exercising plenary review over the question of whether removal was proper under LMRA § 301).

LMRA § 301 provides exclusive federal jurisdiction for suits concerning "violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Similar to ERISA § 502(a), LMRA § 301 converts state causes of action into federal ones and allows removal "when the heart of the state-law complaint is a clause in the collective bargaining agreement." Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987) (quotation marks omitted). "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." Franchise Tax Bd., 463 U.S. at 23 (quotation marks and footnote omitted).

LMRA § 301 completely preempts a state cause of action only when the resolution of said action is "substantially dependent upon analysis of the terms of an agreement made

by ERISA); Burgio & Campofelice, Inc. v. NYS Dep't of Labor, 107 F.3d 1000 (2d Cir. 1997) (New York); WSB Elec., Inc. v. Curry, 88 F.3d 788 (9th Cir. 1996) (California); Minn. Chapter of Associated Builders & Contractors, Inc. v. Minn. Dep't of Labor & Indus., 47 F.3d 975 (8th Cir. 1995) (Minnesota).

11

between the parties in a labor contract." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985); see also Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988) ("[A]n application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement."). By contrast, when resolution of the state law claim is "independent" of a CBA and does not require construing one, the state law claim is not preempted by § 301. Lingle, 486 U.S. at 410; accord Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996).

The plaintiffs' claim under the PWA is not preempted by the LMRA because it exists independent of any CBA. Proving a PWA violation does not require any reference to or analysis of any CBA. It simply requires comparing the wages that plaintiffs were paid to those provided in the PWA. This is a factual question that, just as it does not turn on the interpretation of any ERISA plan, does not turn on the interpretation of any CBA. The carpenters' right to prevailing wages is grounded in the PWA and would exist even in the absence of any CBA.

Although the amount owed to the employees under the PWA may be the same amount owed by virtue of their CBA, such "parallelism" does "not render the state-law analysis dependent upon the [CBA] analysis." Kline, 386 F.3d at 254 (quotation marks omitted). The Supreme Court has explicitly held that even if dispute resolution pursuant to a CBA and a state law would require addressing "precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Lingle, 486 U.S. at 410.

Furthermore, "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). The right to prevailing wages is just such an inalienable right. See N.J. Stat. Ann. § 34:11-56.40 (allowing workers to bring private actions to recover wages under the PWA and providing that "any agreement between such workman and the employer to work for less than such

12

prevailing wage shall be no defense to the action."); accord Cipparulo v. David Friedland Painting Co., 353 A.2d 105, 106 (N.J. Super. Ct. App. Div. 1976). "[Section] 301 preemption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of [CBAs]." Lingle, 486 U.S. at 409. The plaintiffs have asserted a substantive right under the New Jersey PWA to be paid prevailing wages. This right is not preempted by the LMRA.[5]

## IV.

For the foregoing reasons, we will vacate the District Court's order dismissing the case and remand the action with instructions for the District Court to remand the action to state court.

---

[5] Because we hold that the neither ERISA nor the LMRA completely preempts the PWA in these circumstances, and that the District Court lacked removal jurisdiction over the plaintiffs' claims, we will not opine on any of the other arguments raised by either party, such as whether the workers' claims were properly assignable to the plaintiff funds. Such questions may be properly raised in the New Jersey state court upon remand.