**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-3625

_____

ECOTONE FARM LLC and WILLIAM R. HUFF,

Appellants

v.

EDWARD A. WARD, II; TOWNSHIP OF HARDING; PAUL D. FOX; NEW
JERSEY CONSERVATION FOUNDATION; HARDING TOWNSHIP
COMMITTEE; MARSHALL BARTLETT; LOUIS LANZEROTTI; REGINA
EGEA; JAMES RYBKA; NICHOLAS PLATT; SALLY WARD; APGAR
ASSOCIATES

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-11-cv-05094)
District Judge:  Hon. Kevin McNulty

_____

Argued November 10, 2015

Before:  CHAGARES, RENDELL, and BARRY, <u>Circuit Judges</u>.

(Opinion Filed:  January 28, 2016)

Richard A. Bodnar, Esq.
Thomas E. Redburn, Jr., Esq. (Argued)
Lawrence M. Rolnick, Esq.
Lowenstein Sandler
65 Livingston Avenue
Roseland, NJ 07068
        Counsel for Appellants

Thomas B. Hanrahan, Esq.
David J. Pack, Esq. (Argued)
Thomas B. Hanrahan & Associates, LLC
80 Grand Avenue, Suite 2
River Edge, New Jersey 07661
  Counsel for Appellees Edward J. Ward, II, Township of Harding, Harding
  Township Committee, Marshall Bartlett, Louis Lanzerotti, Regina Egea, James
  Rybka, and Nicholas Platt

Craig L. Corson, Esq.
Michael F. Dolan, Esq. (Argued)
Hoagland Longo Moran Dunst & Doukas
40 Paterson Street
P.O. Box 480, Room 301
New Brunswick, NJ 08903
  Counsel for Appellees Paul D. Fox and Apgar Associates

R. James Kravitz, Esq.
Joseph Schramm, III, Esq. (Argued)
Fox Rothschild
997 Lenox Drive
Princeton Pike Corporate Center, Building 3
Lawrenceville, NJ 08648
  Counsel for Appellee New Jersey Conservation Foundation

George C. Jones, Esq.
Graham Curtin
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962
  Counsel for Appellee Sally Ward

_____

OPINION*

_____

CHAGARES, Circuit Judge.

_____

  * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

This is an appeal from an amended opinion and order, dated July 23, 2014, of the United States District Court for the District of New Jersey, dismissing at the pleadings stage all federal claims against the defendants on qualified immunity grounds because the plaintiffs had not adequately alleged that their constitutional rights were violated, and declining to exercise supplemental jurisdiction over the state-law claims. For the reasons that follow, we will affirm in part and reverse in part.

I.

Because we write exclusively for the parties, we set forth only those facts necessary to our disposition. Plaintiff William Huff is the managing member of co-plaintiff Ecotone Farm LLC and the owner of a 31-acre plot of land in Harding Township, New Jersey ("the Property"), where Ecotone conducts farming activity. This lawsuit concerns Huff's efforts to renovate a house and two barns on the Property, which he says were thwarted by twelve defendants: his neighbors Edward and Sally Ward; the Township of Harding; the Harding Township Committee; the individual members of the Harding Township Committee (Edward Ward, Marshall Bartlett, Louis Lanzerotti, Regina Egea, James Rybka, and Nicholas Platt); the township engineer Paul Fox; Fox's engineering firm Apgar Associates; and the New Jersey Conservation Foundation ("NJCF"), which holds a conservation easement over the Property.

Huff purchased the Property in 1987. In approving the estate sale, a state court imposed a conservation easement on the Property to prevent further subdivision, with

3

rights running to the NJCF. The Wards[1] owned an adjacent parcel with an ingress/egress easement permitting them to use Huff's land for a driveway to the public road. Litigation broke out between Huff and the Wards when Huff installed speed bumps in the driveway to prevent the Wards from speeding through, and the Wards responded by destroying the speed bumps. They reached a settlement in 1998, but there was a subsequent legal battle over whether the Wards had complied with the terms of the settlement.

Ward, motivated by animosity from those earlier disputes, made baseless reports to environmental authorities in 2001-02 about Huff's activities on the Property as a means of harassment and instructed the township engineer, Fox, to do the same. After Ward was elected to the Township Committee in 2008, he became Fox's "boss" and "enlist[ed]" Fox to interfere with Huff's renovation. Second Amended Compl. ("SAC") ¶¶ 3-4. Fox's compliance "ensure[d] [his] reappointment as Township Engineer," and his obstruction of Huff's renovation allowed him to "line [his] pockets through baseless engineering charges." Id. ¶¶ 5-6. Huff accuses both Fox and Ward of harboring "personal animus" towards him. Id. ¶¶ 2, 4. Fox openly expressed to others his animosity towards Huff and desire to prevent Huff from obtaining construction permits. Fox also had a financial motive to support Ward and the NJCF. His engineering firm counts NJCF among its clients and receives referrals from Ward, who is a real estate broker.

In 2008, Huff began renovating one of the barns on the Property. The conservation easement permitted him to maintain and replace existing structures, and he

---

[1] Hereinafter, the singular "Ward" will refer to Mr. Ward.

4

obtained zoning approvals and building permits. But Ward and Fox took steps to prevent the renovation from going forward. First, in November 2008 and again in January 2009, Ward tried and failed to have the police halt the renovation by claiming that it made the driveway unsafe. Then in January 2009, Ward emailed Fox court documents from the earlier driveway litigation, and Fox then circulated the documents, along with his own amateur legal analysis, to other township officials and stated his intent to condition his approval of Huff's renovation plans on Ward's approval of any changes near the driveway. That same month, the NJCF mailed Huff a letter about "Storage Area 2," a portion of the Property near the barn where soil and materials involved in the renovation were temporarily stored, which the NJCF claimed violated the conservation easement. Fox also received a copy of the NJCF's letter and, in March 2009, sent Huff a letter saying that the township could not approve any improvements to the driveway area that would violate the conservation easement. He instructed Huff to revise his soil disturbance plan in light of Storage Area 2 and to demonstrate that there were "no legal impediments" arising from the Wards' ingress/egress easement. Id. ¶¶ 73-76. Fox's letter also required Huff's plans to provide for continuous access to both residences at all times with no blockage, which Fox knew to be functionally impossible given the needs of the renovation.

In April 2009, Huff submitted a revised soil disturbance plan, taking account of Storage Area 2, but then heard nothing from Fox for months. Meanwhile, Fox forwarded the revised plan to the NJCF to seek its position, and the NJCF wrote back to object to the plan. Fox continued to correspond with the NJCF and seek its consent throughout the

5

process, which gave the NJCF potential leverage over Huff to renegotiate the terms of its conservation easement. Fox provided Ward and the NJCF with copies of documents relating to the renovation. Fox and Ward also forwarded documentation of the NJCF's opposition to the renovation to other township departments, including the Health Department, which would later deny Huff's application to drill a new well on the Property because of its location within the conservation easement.

In September 2009, Huff received a Notice of Violation concerning Storage Area 2, accusing him of violating the original soil disturbance plan, despite the fact that Huff had submitted the revised plan, which had been approved by default by virtue of Fox's failure to respond to it within thirty days. On October 1, 2009, Fox issued Huff a summons and complaint for violating section 105-104A of Harding Township's municipal code ("the soil disturbance ordinance").[2] The soil disturbance ordinance vests Fox with exclusive enforcement authority, and Huff was the only person against whom the ordinance had ever been enforced.

Huff brought his own state court action, which was resolved in the spring of 2011 when Harding Township agreed to drop the October 2009 enforcement action, as well as its objections to the renovation based on the conservation easement. Fox then issued an engineering review requiring Huff to seek a determination from the New Jersey Department of Environmental Protection ("NJDEP") that the renovation was not a "major

_____

[2] Although the parties refer to "section 105-104A," the relevant ordinances are currently codified at chapter 225 of the municipal code, not chapter 105. As the parties have not provided historical versions of the ordinances or suggested that the ordinances were substantively modified when renumbered, we rely on the publicly accessible version of the ordinances, codified at chapter 225.

6

development" for stormwater management purposes, despite the fact that the township had already requested, and the NJDEP had already made, that determination on several previous occasions. Fox also threatened to issue a Notice of Violation and encouraged and assisted the NJCF to object to the NJDEP's issuance of permits to Huff. On July 12, 2011, Huff received yet another NJDEP determination that the renovation was not a major development, which was reaffirmed when Fox himself called the NJDEP in November 2011 to discuss the issue, at which point Fox finally backed down.

At a January 2012 meeting of the Township Committee, Committeeman Bartlett rejected a proposal to open the township engineer position to competitive bidding, arguing that it would be better to stick with Fox in light of the ongoing litigation. Other committee members approved Fox's reappointment despite having seen "extensive information on Fox's abusive conduct." Id. ¶ 11.

The plaintiffs claim that as a result of all this harassment and obstructionism by the defendants, they incurred significant administrative costs and attorney's fees and lost full enjoyment of the Property. They are suing Fox, Ward, the Township of Harding, the Township Committee, and the individual members of the Township Committee under 42 U.S.C. § 1983 for violation of their substantive due process rights (Count 1), equal protection rights (Count 2), and procedural due process rights (Count 3), and are suing all individual defendants for conspiracy to violate constitutional rights, in violation of 42 U.S.C. § 1985(3) (Count 4). The complaint also contains eleven counts under state law.

In granting the defendants' motion under Federal Rule of Civil Procedure 12(b)(6), the District Court determined that the defendants' qualified immunity defense

7

was apparent on the face of the complaint. See Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) ("Although immunity is an affirmative defense, a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." (quotation marks omitted)). Relying upon only the first prong of the defense ("whether the plaintiff has alleged the deprivation of an actual [federal] right at all," id. at 162), the District Court effectively applied the usual Rule 12(b)(6) standard for failure to state a claim.

The District Court dismissed the section 1983 claims against Bartlett, Lanzerotti, Egea, Rybka, and Platt because there were no allegations about their personal involvement in constitutional violations; the claims against Ward because the allegations concerned his conduct as a private citizen and not under color of state law; and the claims against Harding Township because of insufficient allegations of a municipal policy or custom. The District Court then addressed whether the federal claims stated valid causes of action with reference to Fox (although the District Court concluded that the same principles would apply to the other defendants). With regard to substantive due process, it found the allegations insufficient to meet the "shocks the conscience" standard. It found the equal protection allegations insufficient because the plaintiffs had not identified any similarly situated individuals who were treated differently, and the mere fact that the soil disturbance ordinance had never been enforced against anyone else was insufficient to show irrational disparate treatment. It dismissed the procedural due process claim because the complaint did not describe the state procedures that were allegedly

8

inadequate. Finally, it dismissed the conspiracy claim under section 1985(3) because the claim was not related to class-based discrimination, such as race discrimination.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction to review the final decision of the District Court under 28 U.S.C. § 1291.

"Our review of both a dismissal under Fed. R. Civ. P. 12(b)(6) and a grant of qualified immunity is plenary." Leveto, 258 F.3d at 161. "In reviewing the dismissal of a claim under Rule 12(b)(6), we must accept the allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff[s]." Id. (quotation marks omitted). "[P]laintiff[s] must allege enough facts to state a claim to relief that is plausible on its face." New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey, 760 F.3d 297, 302 (3d Cir. 2014) (quotation marks omitted). "This same approach must be followed when qualified immunity is asserted in a Rule 12(b)(6) motion." Leveto, 258 F.3d at 161.

## III.

For the reasons that follow, we will reverse and remand to the District Court the plaintiffs' equal protection claim as against defendants Ward, Fox, and Harding Township, substantive due process claim as against defendants Ward and Fox, and pendent state-law claims. We will affirm in all other respects.

## A.

9

Under the "class-of-one" theory recognized in Village of Willowbrook v. Olech, 528 U.S. 562 (2000), a plaintiff may state an equal protection claim by alleging that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). Because the plaintiffs' allegations, accepted as true and construed in the light most favorable to them, meet this standard, we conclude that the District Court erred in dismissing their equal protection claim.

The complaint is sufficient with regard to the first element. The plaintiffs allege that "other proximate and/or similarly situated properties were not accorded the treatment suffered by Plaintiffs and complained of herein." SAC ¶ 123. The allegation is made plausible by the totality of the complaint, which describes a "pattern of unjustified harassment." Geinosky v. City of Chicago, 675 F.3d 743, 748 & n.3 (7th Cir. 2012). Under those circumstances, specific descriptions of others similarly situated are not required at the pleadings stage. See id.

The defendants do not challenge the second element of the class-of-one claim, as the complaint plainly alleges intentional action by the defendants.

As to the third element, although there may well have been a rational basis for the defendants' treatment of the plaintiffs, that rational basis is not apparent from the complaint. The complaint repeatedly characterizes the defendants' conduct as "discriminatory, arbitrary, capricious, unreasonable, malicious, improperly motivated, and conscience-shocking," SAC ¶ 123, and motivated by "personal animus," SAC ¶¶ 2,

10

4.  More importantly, the complaint describes a factual setting in which there was no violation of the easements, no real question about whether the renovation was a "major development" for stormwater management purposes, and therefore no legitimate rationale for the defendants to impose barriers to the renovation.  This is sufficient at the pleadings stage.

Even Fox's enforcement of the soil disturbance ordinance is lacking an apparent rational basis, despite the fact that Huff admits to storing construction materials in Storage Area 2.  "[I]t is possible for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials," Miller v. City of Monona, 784 F.3d 1113, 1121-22 (7th Cir. 2015), but the plaintiffs have not done so here.  The Notice of Violation was issued in September 2009 and the enforcement action filed in October 2009 on the basis of the original soil disturbance plan, even though months earlier on April 23, 2009, Fox received Huff's revised soil disturbance plan that took account of Storage Area 2.  State and local law provide that soil disturbance plans submitted to local officials take effect after thirty days if not rejected before then.  See N.J. Stat. Ann. § 4:24-45; Harding Township, N.J., Code § 225-89(C)(1).  Several months elapsed between Huff's submission of the revised plan and Fox's Notice of Violation, during which Fox forwarded the revised plan to the NJCF for comment.  Thus, the revised plan was in effect, and it could plausibly be inferred that Fox knew this before filing the violation and could not have rationally relied on the original plan as a basis for issuing the Notice of Violation.

11

Accordingly, the District Court erred in dismissing the plaintiffs' equal protection claim.[3]

B.

Land ownership "is a property interest worthy of substantive due process protection." DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 53 F.3d 592, 600 (3d Cir. 1995), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392 (3d Cir. 2003). Executive action (as distinguished from legislation) violates substantive due process protections "only when it shocks the conscience . . . the meaning of [which] varies depending on the factual context." United Artists, 316 F.3d at 399-400. The complaint, construed in the light most favorable to the plaintiffs, sufficiently alleges conscience-shocking executive action on the part of the defendants. The District Court therefore erred in dismissing the plaintiffs' substantive due process claim.

Land-use decisions are generally "matters of local concern" and "should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives" because "the term 'improper' sweeps much more broadly" than the "shocks the conscience" standard. Id. at 400, 402. A government official's motives can be improper in some way without being conscience-shocking. But that does not mean that executive actions undertaken with improper

---

[3] The District Court did not reach the second step of its qualified immunity analysis (whether the law was "clearly established"), and the parties have not briefed this issue on appeal. We therefore express no view on the matter and leave it for the District Court to consider in the first instance if necessary.

motives are never conscience-shocking. Indeed, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998). In affirming the dismissal of a substantive due process claim in Eichenlaub v. Township of Indiana, 385 F.3d 274 (3d Cir. 2004), we specifically noted the absence of allegations that local officials were motivated by "corruption or self-dealing" or "bias against an ethnic group," suggesting that the presence of such motives might conceivably change the outcome. Id. at 285-86.

The plaintiffs accuse Ward and Fox of conspiring to use their government positions to harass them repeatedly and obstruct full enjoyment of their land over the course of several years, motivated by personal vendettas and the expectation that their own private interests would be advanced (in Ward's case, gaining greater control over his easement, and in Fox's case, collecting large fees throughout the process and currying favor with Ward and the NJCF, who provide him with work). These accusations rise above the mere allegation of an "improper" motive and depict corruption and repeated abuse of government power with the deliberate aim of harming someone. They are conscience-shocking and sufficient to sustain a substantive due process claim at the pleadings stage.[4]

C.

_____

[4] As with the equal protection claim, the District Court did not reach the second step of its qualified immunity analysis (whether the law was "clearly established") regarding the substantive due process claim, and the parties have not briefed this issue on appeal. We therefore express no view on the matter and leave it for the District Court to consider in the first instance if necessary.

13

"A finding of liability under 42 U.S.C. § 1983 requires that the defendant . . . have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Bonenberger v. Plymouth Twp., 132 F.3d 20, 23 (3d Cir. 1997) (quotation marks omitted). The District Court erred in concluding that Ward did not act under color of state law; the allegations concerning Ward meet the standard.

"[A] state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law," but "off-duty police officers who flash a badge or otherwise purport to exercise official authority generally act under color of law." Id. at 24. "[I]nformal, behind the scenes exertion of state authority is as much within the scope of § 1983 as the more usual examples of formal and open action leading to the denial of federal rights." Kletschka v. Driver, 411 F.2d 436, 447 (2d Cir. 1969).

After Ward was elected to the Township Committee in 2008, he became Fox's "boss" and "enlist[ed]" Fox to interfere with Huff's renovation, and Fox's misconduct "ensure[d] [his] reappointment as Township Engineer by Ward." SAC ¶¶ 3-5. Ward also "kept tabs on" the situation "by using his position, influence, and relationship with defendant Fox to obtain copies of correspondence" between Huff and Fox, and "Fox improperly shared private documents concerning the barn renovation with Ward." Id. ¶ 82. The clear and fair implication of these allegations is that Ward wielded his supervisory position over Fox — in particular, his ability to influence whether Fox would keep his job — to convince Fox to harass the plaintiffs and share documents that

14

facilitated Ward's own complaints. That suffices to allege action under color of state law.[5]

The defendants make much of the fact that Ward was motivated by a longstanding private vendetta predating his tenure as committeeman, and that on some occasions Ward sought to harass the plaintiffs in a manner not requiring use of his state-provided power (for example, by calling police to report the renovation as unsafe). But none of that precludes a finding that at a certain point Ward "somehow us[ed] [his] office to magnify the impact of his private action." Tierney v. Vahle, 304 F.3d 734, 741 (7th Cir. 2002); see also Griffin v. State of Md., 378 U.S. 130, 135 (1964) ("If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity . . . ."); Rivera v. La Porte, 896 F.2d 691, 696 (2d Cir. 1990) ("Though the dispute that precipitated the arrest was private, the response, including the arrest . . . was unquestionably action under color of law.").

---

[5] The complaint does not describe a particular moment at which Ward expressly asserted his authority in order to persuade Fox, but we do not believe that that is required here, given that the allegations clearly and fairly imply an "assertion . . . of official authority" or "imprimatur of state authority." Barna v. City of Perth Amboy, 42 F.3d 809, 818 (3d Cir. 1994). We would, however, distinguish our case from a situation in which the mere prestige of an office magnifies a government official's influence, in the absence of even a hint from the official that she would exercise her powers differently depending on the response to her requests. See Hall v. Witteman, 584 F.3d 859, 866 (10th Cir. 2009) (listing cases) ("Exploiting the personal prestige of one's public position is not state action absent at least some suggestion that the holder would exercise governmental power.").

The District Court also erred in concluding that none of Fox's actions could be attributed to Harding Township under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) and its progeny. Because Fox himself was the final policymaker with regard to enforcing the soil disturbance ordinance, any violation of equal protection rights in connection with that enforcement is attributable to Harding Township. But that enforcement is the only instance of alleged harassment attributable to Harding Township and, viewed in isolation from the entire course of harassment, would not "shock the conscience." We therefore will reverse the District Court's finding as to Monell liability only with respect to the equal protection claim.

"[A] municipality may only be liable for the torts of its employees in one of three ways: First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (citations omitted).

We reject the plaintiffs' argument that the township ratified all of Fox's conduct. They claim that Ward himself ratified Fox's conduct on behalf of the township but cite no authority for the proposition that Ward, acting as a single member of the Township Committee, had power to set policy for Harding Township. As for the committee acting

16

collectively, ratification occurs "[i]f the authorized policymakers approve a subordinate's decision and the basis for it." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (plurality). The committee cannot be said to have "approved" Fox's specific decisions and bases for them merely because it reappointed him as municipal engineer with awareness of complaints about his conduct.

But Fox's decision to enforce the soil disturbance ordinance is attributable to the township because he was the final policymaker in that domain. "[A]n official with policymaking authority can create official policy, even by rendering a single decision." McGreevy, 413 F.3d at 367-68. "[A]n official has final policy-making authority, and can thus bind the municipality by his conduct" if "the official is responsible for making policy in the particular area of municipal business in question" and "the official's authority to make policy in that area is final and unreviewable." Hill, 455 F.3d at 245 (emphases in original). This "is a question of state law." Praprotnik, 485 U.S. at 124.

> Harding Township's soil disturbance ordinance provides:ss
>
> The provisions of this article shall be enforced by the Township Engineer, who shall also inspect or require adequate inspection of the work carried out pursuant to this article. If the Township Engineer finds any existing conditions not as stated in the applicant's erosion and sediment control plan and application, he or she may refuse to approve further work and may require necessary erosion and sedimentation control measures to be promptly installed and may require modifications to the plan when, in his or her judgment, such are necessary to properly control erosion and sediment. He or she may also seek other penalties as provided in § 225-94.

Harding Township, N.J., Code § 225-92. An aggrieved party may ask the "Township Authority" for reconsideration and then appeal to the State Soil Conservation Committee. Id. § 225-93(B). But the "Township Authority" is defined as "[t]he Township Engineer"

17

— Fox himself — "and such other departments, employees, officials or consultants as have been authorized by the Township Committee to approve plans required by this article." Id. § 225-89 (emphasis added). The defendants have failed to point to any municipal official who could potentially have overruled Fox. And the possibility of appeal to the state committee does not make Fox's decision any less final as to the township's policy. Thus, Fox's decision to enforce the soil disturbance ordinance was final and unreviewable for Monell purposes.

E.

The plaintiffs have made no argument that the District Court erred in dismissing their procedural due process claim, so we consider that issue abandoned. We have also considered the plaintiffs' arguments with regard to Count Four of the complaint (conspiracy to violate constitutional rights) and with regard to the personal involvement of defendants Bartlett, Lanzerotti, Egea, Rybka, and Platt, which we find to be without merit. We therefore will affirm the District Court's judgment as to those issues.

We will remand the pendent state-law claims because they were dismissed on the premise that no federal claims remained, which is no longer true, but we express no view as to the merits of those claims or whether the District Court should, in its discretion, exercise supplemental jurisdiction over them.

IV.

For the foregoing reasons, the judgment of the District Court will be reversed and remanded as to the plaintiffs' equal protection claim as against defendants Ward, Fox,

18

and Harding Township, substantive due process claim as against defendants Ward and

Fox, and pendent state-law claims.  The judgment will be affirmed in all other respects.